### In re SOUTHWEST AIRCRAFT SERVICES, INC., a corporation, Debtor.

#### No. LA 85–05197 BR.

United States Bankruptcy Court,
C.D. California.

Oct. 10, 1985.

---

Timothy B. Taylor, Brian L. Holman, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for Atlantic.

Richard Kohn, Hagen & Hagen, Encino, Cal., Richard K. Diamond, Special Counsel, Danning, Gill, Gould, Joseph & Diamond, Los Angeles, Cal., Jerome D. Fireman, Special Counsel, Los Angeles, Cal., for debtor.

Thomas A. Freiberg, Jr., Linda L. Northrup, Dreisen, Kassoy & Freiberg, Los Angeles, Cal., Richard F. Broude, Cynthia Futter, Sidley & Austin, Los Angeles, Cal., Roger P. Freeman, Office of the City Atty. of Long Beach, Long Beach, Cal., for City of Long Beach.

Michael J. Farrell, U.S. Trustee, Los Angeles, Cal.

## MEMORANDUM OF OPINION AND ORDER DEEMING LEASE REJECTED AND REQUIRING SURRENDER OF THE PREMISES TO THE LESSOR

BARRY RUSSELL, Bankruptcy Judge.

The issue before the Court is whether 11 U.S.C. § 365(d)(4) permits this Court to extend the time for a debtor in possession to assume or reject an unexpired lease of nonresidential real property where the

motion to extend is filed within 60 days from the commencement of the Chapter 11 case, but the motion is heard beyond the 60 day period.

The Court concludes that pursuant to 11 U.S.C. § 365(d)(4) the lease was deemed rejected by operation of law 61 days after the case was filed, *i.e.* June 18, 1985, and since the lease has been terminated, the Court may not extend the time to assume or reject the lease.

## BACKGROUND

On June 1, 1971, the City of Long Beach and Bob's Aircraft and Industrial Cleaning Co., Inc. entered into a lease for a parcel of nonresidential real property located at the Long Beach airport. On January 31, 1976, Bob's assigned the lease to Southwest Aircraft Services, Inc.. Under the terms of the lease as assigned to Southwest, Southwest was required, *inter alia*, to pay the City a minimum rent of $150.00 per month or a percentage of the monthly gross receipts received by Southwest, whichever was greater. In addition, the City paid for and constructed an aircraft washrack on the premises. Under the lease, Southwest was required to make monthly payments to the City to pay for the washrack. Southwest paid the amounts due under the lease through February, 1985, but did not make the March, 1985 payment.

On April 18, 1985, Southwest filed this Chapter 11 case and has continued its business of refurbishing airplanes as debtor in possession pursuant to 11 U.S.C. § 1107. On June 14, 1985, 57 days after the petition was filed, Southwest filed its "Motion to Extend Time to Assume or Reject Executory Contracts and Unexpired Leases" in which it sought to extend the time in which it had to assume or reject the lease pursuant to 11 U.S.C. § 365(d)(4). The City opposed the motion on the basis that pursuant to the express terms of § 365(d)(4) the extension had to have been granted within 60 days of the filing of the case, *i.e.* June 17; and since it was not, the lease was deemed rejected. The City also argued that Southwest did not comply with

§ 365(d)(3) because it failed to make the monthly post-petition payments and to cure these post-petition defaults within 60 days after the filing of the case.

The motion was heard before this Court on July 17, 1985, 90 days after this case was filed. This Court orally ruled that because the time to assume or reject had not been extended within the 60 day period pursuant to § 365(d)(4) and the lease had not been assumed within the same period, the lease was deemed rejected. At the hearing, Southwest tendered a $2,900.00 cashier's check to the City to cure all the default under the lease. The City refused the offer since it was outside the 60 day period under § 365(d)(3).

On August 5, 1985, Southwest filed a Motion for Reconsideration and for the first time argued that somehow any rejection of the lease by Southwest as debtor in possession did not terminate the lease, but rather the lease was merely abandoned to Southwest the debtor, and therefore revested in Southwest the debtor. Southwest also argued for the first time that the rejection of the lease constituted a forfeiture which could not be accomplished without compliance with California law. Southwest also requested that it remain in possession for at least 90 days in order to remove a large amount of equipment from the premises.

The Motion for Reconsideration was heard by this Court on August 27, 1985. At the hearing, Southwest argued for the first time that the Court could not order Southwest to surrender possession of the premises to the City of Long Beach because Bob's (assignor of the lease to Southwest) was a necessary party due to an alleged reversionary interest in the lease. Although this Court was highly skeptical of this last minute claim, the hearing was continued to September 9, 1985 to allow Southwest time to substantiate its claim.

At the September 9, 1985 hearing this Court concluded that all of Southwest's arguments were totally without merit and orally ruled that Southwest would be re-

quired pursuant to § 365(d)(4) to turn over immediate possession of the premises to the City, and that Southwest would have until November 5, 1985 to remove its property from the premises.

## DISCUSSION

### 365(d)(3) Default by Southwest

The City argues that Southwest is barred from assuming the lease because Southwest has defaulted on its post-petition lease obligations. The facts are undisputed that Southwest did not make its post-petition monthly lease payments to the City during the 60 day period commencing with the filing of this Chapter 11 case and therefore was in violation of the express terms of 11 U.S.C. § 365(d)(3), which provides in pertinent part:

"The trustee shall timely perform all the obligations of the debtor, except those specified in § 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The Court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, *but the time for performance shall not be extended beyond such 60 day period* ..." (Emphasis added)

Unfortunately, § 365(d)(3) is silent regarding the consequences for non-compliance with its requirements. Nevertheless, if the time for performance, *i.e.* the payment of the monthly lease obligation, may not be extended by the Court beyond the 60 day period, a strong argument may be made for the proposition that a failure to make the lease payments results in a default which may not be cured by the trustee, or in this case by the debtor in possession. Since § 365(b)(1) requires the prompt cure of all defaults in order to assume a lease, it may be argued that the lease is non-assumable and therefore should be deemed rejected due to the failure to comply with § 365(d)(3).

The answer to the § 365(d)(3) problem is less certain than the clear mandate of § 365(d)(4) which deems a lease to be rejected for failure to comply with its terms. Because the outcome of this motion is dictated by § 365(d)(4) the Court will leave the determination of the consequences of a failure to comply with § 365(d)(3) to another day.

### § 365(d)(4)

Section 365(d)(4) was added by the 1984 Amendments to the Bankruptcy Code, and provides as follows:

"Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the Court, for cause, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor."

This subsection was intended to resolve uncertainty about leases between the parties to the lease. *In re By-Rite Distributing, Inc.,* 47 B.R. 660, 669 (D.Utah 1985).

There are two important aspects of § 365(d)(4). First, the trustee (or the debtor in possession pursuant to 11 U.S.C. § 1107) must accept or reject the lease within 60 days. Second, if the trustee or the debtor in possession wants more time in which to decide whether to accept or reject, the extension must be obtained *within* the original 60 day period. If the trustee or debtor in possession does not follow one of these two courses of action, then the lease is deemed rejected.

■ In the instant case, the 60 day time period ended on June 17, 1985. The debtor in possession filed the motion to extend before that date, but did not have the motion heard until July 17, 1985—one month after the expiration of the time period. This is insufficient under the requirements of § 365(d)(4). The language of the section is very clear. An extension of the time period must be made within the original 60

days. Merely filing a motion is not the equivalent of actually being granted an extension. *In re By-Rite Distributing, Inc.*, 47 B.R. 660, 699 (D.Utah 1985). Additionally, there is no language in § 365(d)(4) that provides for tolling of the time period upon filing of the motion, or that allows the order to relate back to the filing of the motion. Thus, the trustee or debtor in possession must obtain a hearing and a decision within 60 days. Otherwise, the lease is deemed rejected. *Id.* at 669–70.

This conclusion is bolstered by the cases construing § 365(d)(1), which involves executory contracts and certain types of leases in Chapter 7 proceedings, and contains virtually the same automatic rejection language as § 365(d)(4). Hence, the interpretation of § 365(d)(1) is indicative of how § 365(d)(4) should be construed.

§ 365(d)(1) provides:

"In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of *residential* real property or of personal property of the debtor within 60 days after the *order of relief,* or within such additional time as the court, for cause, within such 60 day period, fixes, then such contract or lease is deemed rejected."

In *In re Capellen*, 39 B.R. 40 (S.D.Fla. 1984), a trustee in a chapter 7 case did not make a decision to assume or reject within the 60 day period, nor did he request an extension within that time. After the 60 days had elapsed, the trustee sought to extend the time period and assume the lease, curing all defaults. The Court concluded that "[t]he obvious statutory purpose [of § 365(d)(1) ] is to preclude this Court from retroactively extending the time for assumption." *Id.* at 40. Accordingly, the lease was deemed rejected. *Id.* at 41. *See also, In re Mead*, 28 B.R. 1000, 1002 (D.C., E.D.Penn.1983); *In re Kors*, 22 B.R. 19, 20 (D.Vt.1982); *In re Northwood Industries, Inc.*, 25 B.R. 210, 215 (W.D. Wis.1982).

The additional mandate found in § 365(d)(4) requiring *immediate* surrender of the property to the lessor upon rejection, emphasizes the clear Congressional intent that § 365(d)(4) be strictly construed.

■ Southwest argues that Bankruptcy Code § 105(a) grants the Court the power to extend the time period. The same argument has been advanced against § 365(d)(1), and has been rejected. *Northwood Industries*, 25 B.R. at 215 (quoting 2 Collier on Bankruptcy ¶ 365.03 at p. 365–19 (15th ed. 1979)).

Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate *to carry out the provisions of this title*" (emphasis added). Section 105(a) thus provides no basis for a retroactive extension of the 60 day time limit of § 365(d)(1) and § 365(d)(4), since such an extension would defeat rather than carry out the provisions of the Bankruptcy Code. Both § 365(d)(1) and § 365(d)(4) provide for an extension if made with the 60 day period. Sections 365(d)(1) and 365(d)(4) provide, however, that at the end of 60 days a lease will be deemed rejected if no action has been taken. To allow a retroactive extension would effectively reverse the operation of § 365(d)(1) and § 365(d)(4), and would defeat their purpose. Accordingly, the court has no authority to issue an order under § 105(a) since such an order would not carry out the provisions of the Bankruptcy Code.

■ Southwest also argued that section 365(a) requires the court to approve any rejection of a lease, even an automatic statutory rejection. This argument is without merit. First, section 365(a) is expressly made subject to the provisions of section 365(d). Second, the Advisory Committee Note to Bankruptcy Rule 6006 (the rule which provides for a procedure for court approval of an assumption or rejection) specifically states that Rule 6006 "does not apply to the automatic rejection of contracts which are not assumed in chapter 7 liquidation cases within 60 days of the order for relief." Although this statement only refers to 365(d)(1), it is equally applica-

ble to 365(d)(4) since the two sections are virtually identical, and 365(d)(4) was adopted after the statement was made. Accordingly, no court approval of the automatic rejection is needed. If Rule 6006 were interpreted to require court approval, it would be in violation of 28 U.S.C. § 2075 ("... Such Rules shall not abridge, enlarge, or modify any substantive right ...").

Although the automatic rejection of 365(d)(4) is a harsh rule, it is clearly what Congress intended. The language of the statute is unequivocal. Additionally, the legislative history indicates that the purpose of 365(d)(4) is to force the trustee or debtor in possession to make a quick decision, thereby eliminating the problem of extended vacancies. Statement of Sen. Hatch, 98th Cong. 2nd Sess., 1984 U.S.Code Cong. & Admin.News 576, 598–99. To disregard the clear language and legislative history of section 365(d)(4) and allow a decision beyond the 60 day period would nullify the principal objective of Congress, and would be beyond the court's equity powers. *In re By-Rite Distributing, Inc.*, 47 B.R. 660, 671 (D.Utah 1985).

■ "It is difficult to overemphasize the significance that Section 365(d)(4) will have in this and other reorganization cases. It is a time bomb that begins ticking relentlessly and irresistibly upon entry of the order for relief." *Id.* at 670. In order to remain in possession of the leased premises, the trustee or debtor in possession must either assume the lease or show cause why an extension is needed within the 60 days. Failure to do one or the other within the 60 day time period results in rejection of the lease and termination of the leasehold interest.

### Rejection Under § 365(d)(4) Terminates the Lease

■ Southwest's argument that the rejection of the lease by Southwest as debtor in possession did not terminate the lease, but rather the lease was abandoned to Southwest the debtor, is totally without merit. Abandonment of property of the

estate is governed by § 554, not by § 365. If Southwest were correct, § 365(d)(4) would result in an exercise in futility for a lessor.

By requiring that upon rejection under § 365(d)(4), "the trustee shall immediately surrender such nonresidential real property to the lessor," it is clear Congress intended that rejecting a lease terminates the lease. See also *In re Hawaii Dimension's, Inc.*, 47 B.R. 425 (D.Haw.1985); *In re Mead*, 28 B.R. 1000, 1002, (D.C., E.D.Penn.1983) (rejection under § 365(d)(1) terminates the lease).

■ Southwest's argument that the rejection of the lease constituted a forfeiture which could not be accomplished without compliance with California law is also totally without merit. Southwest cannot seriously argue in light of the Supremacy Clause that § 365(d)(4), a federal law, may be modified by California laws. Such a resort to California law would emasculate § 365(d)(4), clearly not the intent of Congress.

### Entitlement of Possession of the Premises

At the August 27, 1985 hearing counsel for the first time argued that Bob's was a necessary party in that somehow its interests would be adversely affected by the turn over of the premises to the lessor (City of Long Beach). The promised authority for this position never materialized and Bob's failed to request to intervene in the hearing. Section 365(d)(4) mandates that upon the rejection of the lease that Southwest "[s]hall immediately surrender such nonresidential real property to the *lessor.*" (emphasis added)

### CONCLUSION

Section 365(d)(4) represents a clear intention of Congress to protect lessors from delay and uncertainty regarding assumption and rejection of unexpired leases of nonresidential real property by trustee or debtor in possession by requiring prompt action in order to prevent the rejection of

such leases. In this case, Southwest failed to comply with the express requirements of § 365(d)(4) resulting in the rejection of the lease.

Southwest must immediately surrender the leased premises to the City of Long Beach. However, the City is to allow Southwest reasonable access to the premises through November 5, 1985 for the purpose of removing its personal property.

Southwest's request for a stay pending appeal is denied.

IT IS SO ORDERED.