In re Ronald Edward BERNARD and Janet Callaway Bernard, Debtors.

Bankruptcy No. 85–00427.

United States Bankruptcy Court, D. Hawaii.

Aug. 6, 1986.

Cuyler Shaw, Honolulu, Hawaii, for First Interstate.

William Burgess, Honolulu, Hawaii, for ESSLL.

## AMENDED MEMORANDUM DECISION RE: MOTION TO AMEND

JON J. CHINEN, Bankruptcy Judge.

On March 24, 1986, First Interstate Bank of Hawaii ("First Interstate") filed its Motion to Amend Order wherein it requested this Court to amend its Findings of Fact, Conclusions of Law and Order Re Motion to Confirm Rejection and Termination of Lease filed on March 13, 1986, as Amended by Order Amending Findings of Fact, Conclusions of Law and Order Re: Motion to Conform Rejection and Termination of Lease ("Amended Order") filed on March 14, 1986, to specify that:

(1) the nonresidential sublease has been rejected and the interests of the

estate, the Trustee and the Debtors in the sublease terminated, and

(2) the trustee (sic) is directed to immediately surrender the estate's interest in the sublease to the sublessors.

First Interstate requested that the court delete from the amended order the statement that "the nonresidential sublease has been rejected and terminated".

On July 8, 1986, Mortgage Bankers Association of Hawaii; Hawaii Bankers Association; Hawaii League of Savings Institutions; and Hawaii Financial Services Association ("Intervenors") were permitted to intervene. A hearing on the Motion to Amend was heard on July 2, 1986, at which hearing, Cuyler Shaw, Esq. represented First Interstate, David A. Ezra, Esq. and Lisa H. Andrews, Esq. represented Intervenors, William H. Burgess, Esq. represented ESSLL Partners, Neal K. Okabayashi, Esq. represented New Peoples' Savings, Steven Geshell, Esq. represented the Debtor and Harold Chu, Esq. represented S. Turner Gates, Trustee.

In its Memorandum in support of its Motion to Amend, First Interstate contends that a surrender of the leased premises by the debtor-lessee to the lessor does not terminate the lease, because surrender is a conveyance of the lessee's interest under a lease back to the lessor. First Interstate contends that the rights of the leasehold mortgagee and other third parties prevent a merger and termination.

First Interstate also contends that, to hold that the rejection of a lease results in its termination, denies adequate protection to the secured creditor of a leasehold interest.

First Interstate further contends that, a holding that the rejection of a lease terminates the lease under Section 365(d)(4), is "an open invitation to fraudulent collusion between lessors and lessees at the expense of leasehold mortgagees."

In reply, ESSLL argues that, to have a conveyance back from the lessee to the lessor, there must be a document executed by both parties. There was no such document executed in the instant case. ESSLL contends that the surrender in the instant case is the result of a breach on the part of lessee; thus such surrender is the result of a forfeiture and results in the termination of the lease.

ESSLL further contends that the secured creditors of a leasehold do have adequate protection, when they act promptly upon the filing of a petition and prior to the rejection and termination of the lease.

As for the leasehold mortgagees' fear that there might be collusion between the lessor and lessee, ESSLL argues that, if there is any collusion, the court can provide the proper relief and protection.

Based upon the memoranda filed, the records in the case and arguments of counsel, the court renders this memorandum decision:

In § 365(d)(4), Congress has set a limit of 60 days after the filing of a petition within which the debtor-lessee is compelled to assume a non-residential lease, unless an extension to assume for cause has been obtained prior to the expiration of the 60 days. Otherwise, the non-residential lease is deemed rejected and the debtor-lessee is required to surrender possession of the leased premises to the lessor.

The legislative history of § 365(d)(4) shows that it was the result of heavy lobbying by the lessors. Previous to the enactment of the 1984 statute, the lessors were often frustrated by the long delay in regaining possession of their property from the debtors-lessees. As a result, many leased premises were often times left vacant while the debtors-lessees delayed in determining whether to assume or reject a lease. Meanwhile, the lessors did not receive any income from the premises leased to the debtors-lessees.

Under Section 365(d)(4), this immediate surrender of the premises upon rejection of the lease was to enable the lessors to once again rent the premises and to earn income from the demised premises.

If it is determined that a lease is still in existence and subject to the leasehold mort-

gage even after the lease is deemed rejected, the lessor will continue to be frustrated in obtaining income from his commercial property. Unless the mortgage is paid, the mortgagee may foreclose on its mortgage and deprive the new lessee of the premises. Under such circumstances, the lessor may have difficulties finding a new tenant. This means that the lessor will be further frustrated and the purpose of Section 365(d)(4) will not be achieved. Such result is contrary to the intent of Congress.

The court has carefully reviewed the cases cited by counsel for First Interstate, for Intervenors and for ESSLL. The court finds that none of the cases cited by First Interstate and by Intervenors discuss the effect of the provision in Section 365(d)(4) which direct that, upon rejection of a non-residential lease, the trustee (debtor-in-possession) shall surrender the property to the lessor. All the cases cited by First Interstate and Intervenors failed to discuss the effect of such provision.

Aside from this court's earlier discussion of the effect of such provision, it is only in *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805 (Bkrtcy.C.D.Cal.1985) that the court discusses the effect of said provision. In *In re Southwest Aircraft Services, Inc.*, the court stated:

By requiring that upon rejection under § 365(d)(4), "the trustee shall immediately surrender such nonresidential real property to the lessor," it is clear Congress intended that rejecting a lease terminates the lease. See also *In re Hawaii Dimension's Inc.*, 47 B.R. 425 (D.Haw.1985); *In re Mead*, 28 B.R. 1000, 1002, (D.C., E.D.Penn.1983) (rejection under § 365(d)(1) terminates the lease).

The Intervenors contend that *In re Southeast Aircraft Service* should be disregarded because it relied on *In re Hawaii Dimensions*, and *In re Mead*. However, a careful study of *In re Southwest Aircraft Services* show that it did not rely on *In re Hawaii Dimensions* or *In re Mead*. The court in *In re Southwest Aircraft Services* declared the lease was terminated after its rejection by relying on the provision calling

for the immediate surrender of the premises to the lessor upon the rejection of the lease. There was no such provision in both *In re Hawaii Dimensions* and *In re Mead* cases.

First Interstate and Intervenors contend that a determination that rejection means a termination of the lease denies adequate protection to the secured creditors of a leasehold interest. The court finds otherwise. Section 554(b) provides as follows:

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

Section 554(b) is a new section and affords the protective provision for a party in interest to protect its interest in the lease. If a mortgagee believes that the debtor-lessee is unable or unwilling to assume the lease, that the lease is burdensome to the estate or that it is of inconsequential value and benefit to the estate, then the mortgagee should immediately request that the court order the trustee (debtor-in-possession) to abandon the leased premises. Once the leased premises is abandoned, § 365(d)(4) is no longer applicable to said leased premises.

If a leasehold premise has equity, the trustee (debtor-in-possession) should assume the non-residential lease prior to the expiration of the 60-day period or any extension thereof. Upon such assumption, Section 365(d)(4) will no longer be applicable. And, the secured creditors may sigh with relief.

The instant case is a Chapter 7 proceeding and the debtor has been in default in payment of its leased rent for a considerable time. First Interstate was aware of this, but took no action to protect its interest until the lease was rejected.

First Interstate had time to adequately protect its interest. But it failed to act promptly. It cannot be said that First Interstate was not provided adequate protection.

The 60-day period to act prior to an automatic rejection of the lease is similar to

the statute of limitation for a cause of action in a tort action. If a person with a cause of action for negligence fails to act within two years, he is forever barred from bringing any suit on said cause of action. The courts have held that there is adequate protection to the injured. For failure to act within a designated period of time, a cause of action may be barred. In such a situation, there is no violation of any right under the constitution.

The secured creditors are concerned that the debtor-lessee and the lessor may conspire to have a lease rejected. The secured creditors need not have such fear. If the court is aware of any conspiracy between the debtor-lessee and the lessor that does not protect the interest of any third party, the court will not condone such action. The court may even dismiss the case for "bad faith" filing.

Nothing presented to this court in the Motion for Reconsideration persuades this court to change its earlier decision. The Motion is denied.

An Order will be signed upon presentment.