**In re GILES ASSOCIATES, LTD., Debtor.**

**Bankruptcy No. 88–50040–A.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Aug. 8, 1988.

---

Garvin Stryker, Law Offices of Garvin P. Stryker, San Antonio, Tex., for debtor.

David Gragg, Jeffers, Brook, Kreager and Gragg, San Antonio, Tex., for City of San Antonio.

William H. Lemons, Cox & Smith Inc., San Antonio, Tex., for Nat. Bank of Commerce.

R. GLEN AYERS, Jr., Chief Judge.

Attorneys for the debtor, Garvin Stryker of the Law Offices of Garvin Stryker for the City of San Antonio, Mr. David Gragg, Jeffers, Brook, Kreager and Gragg, for the National Bank of Commerce, William Lemons of Cox and Smith.

## FACTS

The debtor, Giles Associates, Ltd., filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 4, 1988. Since that date, the debtor has operated its business as a debtor in possession. The debtor owns, operates or leases a commercial office building located on Alamo Plaza in San Antonio, Texas. In fact, the debtor owns one-half of a building immediately across the plaza from the Alamo [1] and leases (or leased) one-half of that same building from the City of San Antonio.

The National Bank of Commerce has a first lien pursuant to a deed of trust on the one-half of the building owned by the debtor. The debtor also gave the bank a lien on its leasehold interest as additional collateral.[2]

Following the date of the petition in bankruptcy, the bank tendered several rental payments to the City which were duly accepted. Unfortunately, neither the debtor nor the bank took any action to assume the lease between the debtor and the City within the sixty day period set forth at § 365(d)(4).

■ Eventually, the City of San Antonio noticed that error and filed a motion seeking to have the lease deemed rejected. In an interesting response, premised primarily on a decision by Jay Gueck, formerly United States Bankruptcy Judge, District of Colorado, the bank alleged that § 365(d)(4) did not work a termination of the leasehold even if the lease was "deemed rejected" under that section. *See In re Storage Technology Corp.,* 53 B.R. 471 (Bankr.D. Colo.1985). This Court rejects the reasoning of the Colorado opinion and other similar opinions cited by the bank and adopts the rationale set forth in cases such as *In re Bernard,* 69 B.R. 13 (Bankr.D. Hawaii 1986), which holds that automatic rejection of the lease under § 365(d)(4) terminates a lease as to all parties, including creditors.

The issues are really very simple and straightforward. Under § 365(d)(4), a lease of non-residential real property is deemed rejected sixty days after the date of a petition in bankruptcy (under Chapter 11 or any other chapter) unless the trustee or debtor-in-possession takes some action to preserve the lease, either by filing a motion to assume or by filing a motion to extend the time for assumption or rejection. *See generally, In re Southwest Aircraft Services, Inc.,* 831 F.2d 848 (9th Cir. 1987). If no action is taken, the lease is deemed rejected, and the trustee or debtor in possession must surrender possession of the premises.

■ This bankruptcy provision is not affected by separate state law doctrines concerning the termination of leases. Because state law does not control this issue, the Court need not consider the strong presumption under state law that there can be no implied termination and forfeiture of a lease. *See, e.g., Wendlandt v. Sommers Drug Stores Co.,* 551 S.W.2d 488 (Tex.Civ. App.—Austin 1977, writ ref'd. n.r.e.). If the state law were relevant the doctrine of *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) would, of course, require this Court to look to state law. However, here it is very clear that the federal policy concerning leases and inaction on the part the debtor-lessor clearly supersedes any state law considerations.

■ Likewise, the fact that the lease in this case required some notice of breach to be provided by the City to the debtor-lessee is also irrelevant. The lease has not been rejected due to any contractual breach by the lessee; the lease is deemed rejected as a matter of law as set forth in the Bankruptcy Code.

---

1. No, not across the alley from the Alamo.

2. This matter will eventually be settled. This opinion will only determine whether the National Bank of Commerce or the City of San Antonio has the whip hand. The case will be settled because the entrance to the building is located on the leasehold premises while the public restrooms are located on the owned premises; the telephone system is located on the owned premises while the pump station is located on the leased premises; stairwell is located in both halves of the premises and both are necessary to meet the fire code; the elevator is located on the leased premises and the water lines are on the owned side.

■ A similar analysis also defeats any claim that the City has somehow accepted an assumption or other treatment of this lease by accepting the rent payments from the lienholder, the National Bank of Commerce. First, lease assumption is something more than the acceptance of rental payments, as ably set forth in opinions such as *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805 (Bankr.C.D. Ca.1985), *rev'd on other grds.*, 831 F.2d 848 (9th Cir. 1988). Further, assumption of a lease cannot occur without some pleading being filed with the Court. That is quite clear from § 365(b) and Bankruptcy Rule 6006. Finally, § 365(d)(3) makes mandatory the payment of all sums due under a lease from the debtor-lessee to a lessor, irrespective of whether or not assumption or rejection occurs. § 365(d)(3) operates independently of § 365(d)(4). The requirement of monthly payments is very clear and has nothing to do with the issue of assumption or rejection. *See, e.g., In re Southwest Aircraft Services, Inc.*, 53 B.R. 805.

■ The security interest held by the bank, the existence of which was known to the City of San Antonio, cannot be said to impose any affirmative duties on the City of San Antonio concerning the rights of the National Bank of Commerce. To the best of this Court's knowledge, there exists no such duty on behalf of the City.

■ Finally, although the lease may provide options allowing the debtor or some third party lienholder to cure defaults under the lease, it is very clear from these facts that no default has occurred under the lease. The default is under a separate statutory mandate not linked in anyway whatsoever to the terms of the lease.

All of this leads back to *In re Storage Technology Corp.*, 53 B.R. 471 (Bankr.D. Colo.1985), which must be addressed. Basically, Judge Gueck's opinion holds that rejection of a lease under § 365(d)(4) is merely a "breach" of the lease. *See* § 365(g). Since a breach does not terminate a lease—and, since § 365(d)(4) does not itself use the word "terminate"—Judge Gueck ruled that failure to act under

§ 365(d)(4) did "not have the conclusive effect of terminating the lease." *Id.* at 475.

This analysis would make some sense if the Bankruptcy Code at § 365(d)(4) and the legislative history of that section were not so very clear. First, the legislative history of the so-called "shopping center" amendments enacted as part of the 1984 Bankruptcy Amendments and Federal Judgeship Act ("BAFJA"):

The bill would lessen the problems caused by extended vacancies and partial operation of tenant space by requiring that the trustee decide whether to assume or reject nonresidential real property lease within 60 days after the order for relief in a case under any chapter. This time period could be extended by the court for cause, such as in exceptional cases involving large numbers of leases. One of the minor changes in this subtitle was to limit it to nonresidential real property leases. If the lease is not assumed or rejected within this 60–day period, or any additional period granted by the court, the lease is deemed rejected and the trustee must immediately surrender the property to the lessor.

\* \* \* \* \* \*

The acceptance by the lessor of any payments made by the trustee as required by ... [§ 365(d)(3) ] does not constitute a waiver or relinquishment of the lessor's rights under such lease or under the bankruptcy code.

130 Cong.Rec. S8894–95 (Daily Ed. June 29, 1984).

Further, the statute is clear. Failure to act results in first rejection and next in an absolute obligation to surrender the premises: "If the trustee does not assume or reject an unexpired lease...., then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor." § 365(d)(4).

To say, as Judge Gueck, that the failure to act is merely a "breach" is not consistent with either that statute or its history. Why not? Because § 365(d)(4) deems that

the trustee or debtor has, by failing to act, breached the lease and that the breach is so serious that immediate surrender is mandatory. The breach plus the surrender obligation can only be seen as termination of any of the trustee's or debtor's rights in the leasehold. Otherwise, the face of the statute and its history are meaningless.

Further, Judge Gueck's reliance upon the use of different terms—"rejection", "breach", and "termination"—at different sections of the Code is not proper. Yes, Congress could have and should have used consistent terms, but Congressional inconsistency creates no presumptions. *Cf. In re Storage Technology Corp.*, 53 B.R. at 474.

For example, "breach" is equated with "rejection" at § 365(g) so as to make post-petition rejection give rise to a pre-petition (non-priority) claim. This section—§ 365(g) —does not, therefore, merely define "rejection" or "breach", although Judge Gueck implies as much. *Id.* at 474.

Where "termination" is used in the context of a lease, as in § 502(b)(6), Judge Gueck is right to say that the term is used to limit claims. *Id.* He stretches to conclude, however, that this shows that "[t]he drafters of § 365 apparently knew the difference between breach and termination." *Id.*

The key to the Gueck analysis is the use of "equity", which he says requires protection of parties in a position similar to that of the bank in this case. *Id.* The "equity" done is not permissible. It rewrites the Code. The mandate of section 365(d)(4) is clear: Act within sixty days or loose possession.

Failure to act is rejection and a rejected lease can never thereafter be assumed or rejected in a chapter 11 case. *See* § 1123(b)(2): "a plan may ... provide for assumption ... of any ... lease ... not previously rejected ...". In a chapter 7 case, the lease cannot be assumed by a trustee—at least by implication—since § 365(a) directs the trustee as able to assume or reject. Presumably, while the trustee can assume and then reject, under § 365(g)(2), the trustee cannot reject and then assume, for § 365 makes no provision for such a sequence.

Analysis of the Code, then, clearly shows that § 365(d)(4) terminates leases. The poor creditor in the position of the bank, done in by this provision, is in no worse position than a second lienholder faced with a § 362 motion for relief where the debtor cannot provide adequate protection. The bank must act to protect itself. This Court does not have a "roving commission to do equity." *See United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986). It will not, should not, and cannot protect the bank or the debtor from the consequences of inactivity, for those consequences are clearly mandated by the Code and by Congress.

An order will be submitted by the City.