In re ARIZONA APPETITO'S STORES, INC., an Arizona corporation, Debtor.

ARIZONA APPETITO'S STORES, INC., an Arizona corporation, Appellant,

v.

PARADISE VILLAGE INVESTMENT COMPANY, an Arizona limited partnership; Westcor Company Limited Partnership, Appellees.

No. 88–15147.

United States Court of Appeals, Ninth Circuit.

Submitted June 27, 1989.*

Decided Jan. 3, 1990.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

H.M. Bohlman, Tempe, Ariz., for appellant.

Bryan A. Albue, Murphy & Posner, Phoenix, Ariz., for appellees.

Before TANG, REINHARDT and WIGGINS, Circuit Judges.

TANG, Circuit Judge:

Arizona Appetito's Stores, Inc. (Appetito's), a Chapter 11 debtor-in-possession, appeals the denial of its motion to assume a ground lease for nonresidential real property after having filed a motion to reject the lease. Appetito's contends that it could assume the lease even after the expiration of the sixty-day period set forth in 11 U.S.C. § 365(d)(4) because its motion to reject, filed within the sixty-day period, prevented the lease from being "deemed rejected" under 11 U.S.C. § 365(d)(4). Court approval, Appetito's argues, is required to make rejection effective.

Both the bankruptcy and the district courts ruled that because Appetito's failed to file a motion to assume the lease within the statutory period, the lease had been deemed rejected under section 365(d)(4). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appetito's filed a voluntary Chapter 11 bankruptcy petition on September 10, 1987. When listing its executory contracts as property of its estate, Appetito's listed a ground lease in a shopping center in Paradise Valley, Arizona owned by Paradise Village Investment Company (PVIC).

That lease, subject of this appeal, was executed between PVIC as lessor and RBG International Limited Partnership (RBG) as lessee in 1984. RBG then assigned the lease to Appetito's and sold Appetito's a building it had constructed on the site. The lease required PVIC's written consent before the assignment or subletting of the property. Appetito's sold its building to Appetito's Income Properties '86 Limited Partnership (AILP), but then rented the building back from AILP. Finally, Appetito's sublet the ground lease to AILP[1] without written consent from PVIC.

In its bankruptcy proceedings, on November 2, 1987, Appetito's filed a motion specifically rejecting the subject ground lease as well as all other associated leases. Appetito's filed this motion within the 11 U.S.C. § 365(d)(4) sixty-day deadline. On November 17, 1987, PVIC, the property owner, responded by filing a notice of deemed rejection of the ground lease.

On January 7, 1988, about two months after the sixty-day period had expired, Appetito's filed a motion to amend its previous rejection motion. Appetito's claimed that its previous motion to reject the lease required court approval and prevented the lease from being "deemed rejected" under section 365(d)(4). Therefore, Appetito's urged the bankruptcy court to allow it to assume the lease even though the sixty-day period under section 365(d)(4) had already expired.

---

1. Appetito's often refers to this sublease as one where it was the subtenant and AILP was the sublessor, but the words of the sublease indicate that their roles were the reverse.

On January 22, 1988, the bankruptcy court stated:

> [T]he Debtor having filed no motion to assume the Lease nor motion for extension of time in which to elect to assume or reject the same within 60 days of the entry of the order for relief, and good cause appearing: IT IS HEREBY ORDERED THAT: pursuant to 11 U.S.C. § 365(d)(4), the Lease was deemed rejected on November 9, 1987 and Debtor's motion to amend is therefore denied.

On January 29, 1988, Appetito's moved the bankruptcy court to reconsider its ruling and reiterated its request to assume the lease. Appetito's also moved for rejection of a sublease of the same premises, which Appetito's executed as lessor with AILP as subtenant. On April 7, 1988, the bankruptcy court declined to modify its previous order that the ground lease was deemed rejected, but agreed to rule that the sublease had also been rejected.

The district court affirmed the bankruptcy court's decision on August 9, 1988. Appetito's filed this appeal on August 16, 1988.

## STANDARD OF REVIEW

■■■ A final order addressing the assumption of a lease pursuant to 11 U.S.C. § 365(d)(4) is reviewable as a separate and discrete matter in a bankruptcy case. *In re Victoria Station, Inc.*, 840 F.2d 682, 684 (9th Cir.1988). The district court's decision is reviewed de novo. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1078 (9th Cir.1989). The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law de novo. *Id.* at 1079. Finally, a district court's determinations on questions of law or mixed questions of law and fact which implicate constitutional rights are reviewed de novo. *LaDuke v. Nelson*, 762 F.2d 1318, 1322 (9th Cir.1985), as modified by 796 F.2d 309, 310 (9th Cir. 1986).

## DISCUSSION

1. Treatment of the Lease as Property of the Estate.

■■■ The trustee or debtor-in-possession may assume an unexpired lease of the debtor only if it is property of the estate. Section 541(a) of 11 U.S.C. provides that the property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." A leasehold is property of the estate if a debtor is the lessee of the property at the time the petition for bankruptcy is filed. *In re American Int'l Airways*, 44 B.R. 143, 145 (Bankr.E.D.Pa.1984).

When Appetito's moved to amend its motion to reject, it urged the bankruptcy court to allow it to assume the lease, thus advancing the position that the lease was property of the estate. Although the court denied Appetito's motion to assume, it implicitly adopted Appetito's position that the lease was its property by applying 11 U.S.C. § 365(d)(4) to the lease.

On appeal, Appetito's maintains its original position that the lease was property of the estate and argues that it should have been allowed to assume the lease. However, Appetito's also advances a contrary position. It argues that it was no longer the lessee of the lease at the time it filed for bankruptcy since Appetito's assigned the lease to AILP. Appetito's thus urges this court to rule that the ground lease was not property of the estate.

We decline to entertain Appetito's second argument that it was no longer the lessee. That argument is irrelevant to this appeal. Appetito's challenges the bankruptcy's court's refusal to allow it to assume the lease. We consider that question only.

2. The Effect of a Motion to Reject Under 11 U.S.C. § 365(d)(4).

Appetito's argues that the filing of a motion to reject the lease within the sixty-day period of 11 U.S.C. § 365(d)(4) prevented the lease from being "deemed rejected" under section 365(d)(4). Appetito's relies solely on the language of that provision. Section 365(d)(4) provides that "if the trustee does not assume or reject an unexpired lease ... within 60 days after the date of the order for relief ... then such lease is deemed rejected."

Appetito's contends that this language implies that if a trustee *does* reject an unexpired lease within sixty days, the lease will *not* be "deemed rejected." Appetito's reasons that when a motion to reject thus precludes a deemed rejection under section 365(d)(4), section 365(a) then applies and requires affirmative court action on the motion to reject the lease. In this case, Appetito's argues, the bankruptcy court should have disapproved of the motion to reject as an unsound business decision. Rejection made Appetito's vulnerable to a lawsuit for its improper assignment of the lease and unjustly enriched PVIC.

 We interpret a federal statute by ascertaining the intent of Congress and by giving effect to its legislative will. *In re Southwest Aircraft Serv.*, 831 F.2d 848, 849 (9th Cir.1987), *rev'ing* 66 B.R. 121 (Bankr. 9th Cir.1986), 53 B.R. 805 (Bankr.C. D.Calif.1985), *cert. denied sub nom. City of Long Beach v. Southwest Aircraft Serv.*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988). We look first to the language of the statute itself to determine legislative intent. *Id.* However, if the statutory language gives rise to several different interpretations, we must adopt the interpretation which "can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *United States v. 594, 464 Pounds of Salmon*, 871 F.2d 824, 827 (9th Cir.1989) (quoting *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957)).

 Section 365(a) states: "Except as provided in . . . subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." This section requires two distinct actions, one by the trustee and one by the court. The trustee is to assume or to reject, and the court is to approve or disapprove. Therefore, under section 365(a), rejection of an unexpired lease can be accomplished only by an order of a bankruptcy court. *See In re Steiner*, 50 B.R. 181 (Bankr.N.D.Ohio 1985).

Section 365(a), however, is expressly subject to the provisions of section 365(d). *In re Southwest Aircraft*, 53 B.R. at 809, *rev'd on other grounds*, 831 F.2d 848. Section 365(d)(4) provides that if a trustee does not assume or reject an unexpired lease of nonresidential real property within sixty days of bankruptcy, or within such additional time as the court fixes, the lease is "deemed rejected."

 The term "deemed rejected" has been interpreted to mean that section 365(d)(4) is self-executing. That is, the rejection of a lease occurs automatically *without* the need for court approval. *Id.* at 809.[2] Once statutory rejection of a lease has occurred, the rejection is conclusive. *In re Sonora Convalescent Hosp. Inc.*, 69 B.R. 134, 137 (Bankr.E.D.Cal.1986).

 The language of section 365(d)(4) makes it clear that when a trustee fails to file a motion to assume a lease within the sixty-day period set forth in that provision, the lease is "deemed rejected." The language of this section does not make clear, however, whether a lease is "deemed rejected" when a trustee files a motion to reject a lease within the sixty-day period without filing any other motion concerning the lease during that period.

Given the legislative history of section 365(d)(4), however, we conclude that a lease is deemed rejected with the passage of the sixty-day period, where, as here, the trustee has filed a motion for rejection. Because the lease has been deemed rejected under section 365(d)(4), section 365(a) does not apply and court approval is not required.

---

2. The *Southwest Aircraft* court based this interpretation on the Advisory Committee Note to Bankruptcy Rule 6006, a rule which provides for a procedure for court approval of an assumption or rejection. According to the Note, Rule 6006 "does not apply to the automatic rejection of contracts which are not assumed in chapter 7 liquidation cases within 60 days of the order for relief." In the *Southwest Aircraft* bankruptcy court opinion, Judge Russell reasoned that "Although this statement only refers to 365(d)(1), it is equally applicable to 365(d)(4) since the two sections are virtually identical, and 365(d)(4) was adopted after the statement was made." *Southwest Aircraft*, 53 B.R. at 809–10.

While the legislative history of section 365(d)(4) does not specifically deal with the effect of a timely-filed motion to reject upon a lease, it does provide a useful background as to the purpose of the section. According to the history of section 365(d)(4), the section was enacted in 1984 as part of the "Shopping Center Bankruptcy Amendments." These amendments addressed the problem that debtors in Chapter 11 reorganizations had no fixed deadline to assume or reject unexpired leases:

> Congress became concerned about the practical consequences of Chapter 11 filings by tenants of shopping centers. It was particularly concerned that mall operators were facing periods of extended vacancies, that would last until such time as the bankruptcy courts would finally decide to take the initiative and force debtors to make a choice whether to assume or reject the leases.

*Southwest,* 831 F.2d at 850 (citing 130 Cong.Rec. S8891, S8894–95 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.Code Cong. & Admin. News 576, 590, 598–99).

We conclude that the legislative history of section 365(d)(4) conflicts with Appetito's interpretation of the section. Requiring court approval each time a motion to reject is filed within sixty days of bankruptcy would invite delay, causing the extended vacancies section 365(d)(4) was designed to prevent.

Instead, we believe that the general purpose of section 365(d)(4) would best be served if, when a debtor files a motion to reject a lease within sixty days of bankruptcy and no other motion regarding the lease is filed within that period, the lease is deemed rejected at the end of the sixty days. The purpose of protecting lessors from delay and uncertainty is thus served, for the sixty-day deadline stands firm. We see no reason why a debtor should be allowed to claim it has made a mistake in rejecting the lease if it did not notify the court about the mistake before the end of the sixty days. To allow a debtor to claim that it has made a mistake about rejecting a lease without setting a time limit for this kind of claim would defeat the purpose of 11 U.S.C. § 365(d)(4).

Thus, we hold that the bankruptcy and district courts did not err in ruling that Appetito's lease was deemed rejected under section 365(d)(4) on November 9, 1987, sixty days from the date Appetito's filed for bankruptcy.

3. The Deemed Rejection of a Lease Under 11 U.S.C. § 365(d)(4) and the Fifth Amendment.

■ Appetito's argues that the bankruptcy court's orders deeming the ground lease rejected are invalid under the Fifth Amendment because the orders result in the taking of private property by the government to benefit another private party. What was taken, Appetito's argues, was not only the value of its lease, but also the value of the building on the premises. However, Appetito's filed the motion to reject the lease on which its interest in the building was based. Under the statute it could have filed a motion to assume instead.

Neither the orders nor the bankruptcy statute, then, effected a taking of Appetito's property. Rather, Appetito's own conduct resulted in the rejection of the lease and the loss of its interest in the building.

Therefore, the bankruptcy and district courts' rulings are

AFFIRMED.