**In re 6177 REALTY ASSOCIATES, INC., Debtor.**

**Bankruptcy No. 92–30830–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

July 20, 1992.

Kevin C. Gleason, Kinsey & Gleason, Boca Raton, Fla., for debtor.

---

L. Louis Mrachek, Gunster, Yoakley, Criser & Stewart, West Palm Beach, Fla., for Continental Realty Corp.

Jeffrey L. Zivyak, Zivyak, Adler, Klein & Liss, New York City, for Finch Apartment Corp.

Daniel L. Bakst, Ackerman, Bakst, Cloyd & Scherer, P.A., West Palm Beach, Fla., for trustee for Michael and July Papo.

## ORDER DENYING APPLICATION FOR APPROVAL OF PROPOSED LEASES AND REQUIRING SURRENDER OF PREMISES

ROBERT A. MARK, Bankruptcy Judge.

This Chapter 11 case was filed on March 12, 1992. The debtor seeks approval of two proposed subleases of commercial space on the first floor of a co-op building located at 61 East 77th Street, New York, New York. The space is owned by Finch Apartment Corp. ("Finch") which objects to the subleases. Continental Realty Credit Corporation ("Continental"), the debtor's largest creditor, also objects.

The court heard argument on April 7, 1992. After considering the record, including the pleadings filed and arguments presented by the parties, and after review of the applicable law, the Court concludes that the Debtor's application must be denied.

## BACKGROUND

Michael Papo, currently a Chapter 7 debtor in this Court, Case No. 91–33221, is the lessee of the space under a Master Lease from Finch. Papo has subleased the space to Judy Papo, his wife, who is also a Chapter 7 debtor, in a case consolidated with Mr. Papo's case. Daniel Bakst is the trustee ("Trustee") in the Papos' case.

Under a second sublease, the space is subleased back to Michael Papo. The interest of the debtor here arises under a third sublease in which Michael Papo is the sublessor landlord and the debtor, 6177 Realty Associates, Inc. ("Debtor" or "6177 Realty"), is the tenant.

Continental is this Debtor's largest creditor with a claim alleged to be in excess of $2.7 million. Continental also claims to hold a leasehold mortgage encumbering all interests in the property held by this Debtor and by the Papos individually.

As part of a stipulation entered on the record in the Papo case on February 11, 1992, the Trustee was granted an extension through February 21, 1992 to assume the Papos' lease and sublease interests in the commercial space at issue here. The Trustee did not move to assume and therefore, under § 365(d)(4), all leasehold and subleasehold interests of the Papos were deemed rejected and the Trustee and Papos were obligated to surrender possession.

*The Issue: Did Rejection of the Papos' Interests Terminate the Leases and Subleases and Thereby Extinguish Any Rights of This Debtor in the Property?*

## DISCUSSION

Finch and Continental argue that the Trustee's rejection of Papo's interest in the Master Lease from Finch terminates the Master Lease and all subleases including the third sublease from Papo to the Debtor. The Debtor acknowledges that by operation of § 365(d)(4), the interest of the Papos and the Papos' estate was extinguished when the leases were not timely assumed. The Debtor argues that rejection under § 365(d)(4) only determines the landlord's rights with respect to the Papos and their estate but does not resolve state law questions which may remain regarding the rights of this Debtor as a sublessee.

I have reviewed the cases cited by the parties. I have also read portions of an article written by Michael Andrew, *Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection"*, 59 U.Colo.L.Rev. 845 (1988). Professor Andrew's arguments are persuasive regarding the effect of rejection of certain executory contracts. His "no thank you" concept of rejection as opposed to the more traditional "zap" theory of rejection provides a logical framework for analyzing certain disputes including, for example, the enforceability of arbitration clauses or covenants not to compete after rejection of an executory contract.

■ This Court agrees that rejection does not always equal termination of executory contracts. I nevertheless agree with the majority of cases which hold that rejection does equal termination of non-residential real property leases in which the debtor or Trustee is the lessee. *See Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077 (9th Cir.1989); *In re Giles Associates, Ltd.*, 92 B.R. 695 (Bankr.W.D.Tex. 1988); *In re Bernard*, 69 B.R. 13 (Bankr. D.Haw.1986); *In re Southwest Aircraft Services, Inc.*, 53 B.R. 805 (Bankr.C.D.Cal. 1985).

The primary reason for reaching this result is the specific statutory language in § 365(d)(4). That section provides that if the Trustee does not assume an unexpired lease within 60 days of the filing date or within such time as the Court may have fixed, "then such lease is deemed rejected, and the Trustee shall immediately surrender such non-residential real property to the lessor." § 365(d)(4).

It is this surrender language in § 365(d)(4) which renders rejection of a non-residential real property lease different from other executory contracts in which rejection may not equal termination. As explained by Judge Russell in the *Southwest Aircraft* case, "by requiring that upon rejection under § 365(d)(4), 'the Trustee shall immediately surrender such non-residential real property to the lessor,' it is clear Congress intended that rejecting a lease terminates the lease." 53 B.R. at 810.

The *Giles* and *Bernard* decisions also focus on § 365(d)(4) and the federal policy embodied in that section. As explained in *Giles*, the import of § 365(d)(4) is to treat rejection as a breach that is so serious that immediate surrender is mandatory. "The breach plus the surrender obligation can only be seen as termination of any of the Trustee's or Debtor's rights in the leasehold. Otherwise the face of the statute and its history are meaningless." 92 B.R. at 698. In *Bernard*, Judge Chinen discussed the legislative history and purpose of § 365(d)(4) and noted that "this immediate surrender of the premises upon rejection of the lease was to enable the lessors to once again rent the premises and to earn income from the demised premises." 69 B.R. at 14.

■ The *Bernard* and *Giles* cases addressed the claims of creditors holding mortgages on the leases at issue. In this case, the interest is that of a sublessee, but the question is the same—can a mortgagee or sublessee retain any interest upon rejection of the underlying lease? The logic and rationale in *Bernard* and *Giles* is compelling and convince this Court that the answer is no. Rejection of a non-residential lease results in termination of the lease. Once the underlying lease is terminated, leasehold mortgagees or sublessees retain no interest that can be pursued in bankruptcy court or state court.

The surrender remedy specially provided in § 365(d)(4) by Congress embodies a federal policy to ensure that unless extended by the Court, landlords obtain possession of their property within sixty (60) days of the filing if the lease is not assumed. It would be contrary to this policy to allow mortgagees or sublessees whose rights are derived solely from a debtor's interest as direct lessee to continue to tie up the property with litigation in bankruptcy court or in state court.

By contrast, deeming rejection to be termination is consistent with the public policy embodied in § 365(d)(4) and does not prejudice the rights of leasehold mortgagees or sublessees. Depending upon the terms of their mortgage or sublease, these parties may have standing to seek assumption of the underlying lease to protect their rights. But, they must act within the statutorily prescribed sixty (60) days.

The Debtor relies primarily on *In re Storage Technology Corp.*, 53 B.R. 471 (Bankr.D.Co.1985). In that case, the court held that rejection does not have the conclusive effect of terminating even a non-residential real property lease. The *Storage Technology* decision was discussed and rejected by the *Giles* and *Bernard* courts in opinions which I find persuasive. Moreover, the court in *Storage Technology* was faced with relationships and potential equities that are different from those that exist here. Here the underlying Papo leases were seriously in default. Moreover, both

the Debtor and the Papos are substantially in debt to Continental, which holds a mortgage on all of these leasehold interests. The Papos' Trustee made no effort and had no ability to cure the underlying lease. This Debtor did not offer nor was it in a position to cure the defaults in the underlying lease even if it had attempted to require assumption by the Trustee.

Thus, unlike *Storage Technology*, there is no equitable argument here that would support preserving any rights for this Debtor. Finch and Continental are both entitled to enforce their rights in the property free of any former interest of the Papos based upon the underlying rejection and required surrender by the Papos. It would be harsh and inequitable to require these parties to separately litigate here or in state court against this Debtor, a corporation controlled by the Papos which holds rights only through the Papos' senior leases.

The Court finds it unnecessary and inappropriate to consider what rights, if any, the Debtor/sublessee could claim under New York law following a breach by the lessee. Instead, I agree with the comment by Judge Russell in *Southwest* that under the Supremacy Clause, § 365(d)(4) preempts or supersedes any state law rights that the sublessee or mortgagee could assert following a breach by the lessee. 53 B.R. at 810. The *Giles* court also noted that § 365(d)(4) is not affected by separate state law doctrines concerning the termination of leases: "It is very clear that the federal policy concerning leases and inaction on the part [of] the debtor-lessor clearly supersedes any state law considerations." 92 B.R. at 696. Thus, there is no reason to analyze the rights, if any, which 6177 Realty could assert under state law following the breach by the Papos and resulting termination of their leases.

■ Having determined that the rejection of the underlying interest of the Papos constitutes termination of all of the leases lower in the chain, including the sublease to 6177 Realty, two conclusions are inescapable. First, the Debtor held no interest in the property as of the filing date. The Papos' interest was extinguished and the leases and subleases terminated as of February 21, 1992 prior to the filing of this Chapter 11 petition. Second, there is no need to require further litigation in this Court or in the state court to determine the rights of 6177 Realty in the property. Rather, having concluded that the underlying lease is terminated, the landlord is entitled to immediate surrender of the premises not only by the Papos but also by 6177 Realty and any other parties who claim an interest in the premises. *See In re Elm Inn, Inc.*, 942 F.2d 630 (9th Cir.1991) (holding that it is appropriate for the bankruptcy court to enter an order compelling surrender of the premises once a lease has been rejected under § 365(d)(4)).

For the foregoing reasons, it is

ORDERED as follows:

1. The Debtors' application for approval of proposed leases is denied.

2. Finch Apartment Corporation is entitled to immediate possession of the leasehold property free and clear of any claim or interest of this Debtor. The sublease interest of this Debtor is deemed terminated.

DONE AND ORDERED.