**In re BSL OPERATING CORP., Debtor.**

**BSL OPERATING CORP., Plaintiff,**

v.

**125 EAST TAVERNS, INC., et al., Defendants.**

**Joel Carroll, et al., Additional Defendants on Counterclaims.**

**Bankruptcy No. 85 B 11361 (BRL). Adv. No. 85–6652A.**

United States Bankruptcy Court, S.D. New York.

Feb. 18, 1986.

---

Lewis W. Siegel, New York City, for debtor.

Hyman, Miner & Robbin, New York City, for 125 East Taverns, Inc., Terence Dunne and Michael Coyne; Leonard H. Rubin, of counsel.

### Decision and Order on Motion to Reargue

BURTON R. LIFLAND, Bankruptcy Judge.

An adversary proceeding seeking turnover of property does not often yield as many interesting facts as have surfaced in the instant chapter 11 case. Here, the tenant under a lease filed two sequential chapter 11 petitions. The lease in at least some form survived the first case by fortuitous operation of law; in the second case, the former debtor tenant was not so fortunate.

Subsequent to the tenant's forays in bankruptcy court, the landlord found itself obligated to file a chapter 11 petition as well. The landlord, who is now the debtor, has filed the motion presently at issue, seeking immediate possession of the leased premises because of the tenant's failure to timely assume the lease in tenant's second chapter 11 case. We hold that the tenant's leasehold right to possession of the premises has legally expired.

### Factual Background

On May 18, 1983, 125 East Taverns, Inc. ("Taverns") filed a voluntary petition for reorganization ("the 1983 case") pursuant to Chapter 11 of the Bankruptcy Reform Act of 1978 ("the Code"). Taverns leased commercial space ("the lease") to operate a cabaret known as Tramps in a building ("the building") at 125 East 15th Street in New York City owned by BSL Operating Corp. ("BSL"), the debtor herein. Although Taverns is a corporation, it filed its petition *pro se*, an impermissable filing.[1]

The salient filing events are as follows. BSL was listed as a creditor of Taverns for past rent and oil bills. According to a signed but undated affidavit made by Taverns' president accompanying the petition filed in 1983 case, the lease ran until *October 1985*. On February 6, 1984, Taverns filed a Plan of Reorganization and on April 5, 1984, a Disclosure Statement. The Plan and the Disclosure Statement were completely silent as to Taverns' assumption or rejection of the lease. On August 2, 1984, Taverns filed an Amended Disclosure Statement which did not mention the lease. On August 30, 1984, Taverns filed a Second Amended Disclosure Statement ("the Disclosure Statement"). In this disclosure statement, dated August 15, 1984, Taverns stated that "it [would] assume a lease presently in effect [sic] on business premises known as 125 East 15th Street, New York, New York which will run until *May 31, 1995.*" (emphasis added). On September 24, 1984, Taverns filed a Supplement to Amended Disclosure Statement ("the Supplement"), dated August 31, 1984. The Supplement provided that "the unexpired portion of the lease continues until *April 30, 1995.* The lease contains escalation provisions for rent throughout the leasehold and debtor maintains that rental is at fair market value throughout the terms of the lease." (emphasis added). On September 20, 1984, an order was entered approving the Disclosure Statement of August 15, 1984 and the Supplement. An order confirming Taverns' Plan of Reorganization was signed on October 29, 1984. The only affidavits of service in the court files for the entire 1983 case are for the Notice of Hearing on the initially filed disclosure statement and another affidavit entitled "Affidavit of Service of Plan of Reorganization Disclosure Statement and Ballot."

---

1. See Advisory Committee Note to Rule 9010. It is well settled that a corporation cannot appear *pro se*. *See, e.g., Jones v. Niagara Frontier Transportation Authority,* 722 F.2d 20, 22 (2d Cir.1983); *Securities and Exchange Comm'n v. Research Automation Corp.,* 521 F.2d 585, 589 (2d Cir.1975); *Jackson v. Statler Foundation,* 496 F.2d 623, 626 (2d Cir.1974); *Shapiro, Bernstein & Co. v. Continental Record Co.,* 386 F.2d 426, 427 (2d Cir.1967); *In re Plunkett,* 47 B.R. 172, 174 (Bankr.D.Wis.1985).

The body of the affidavit, filed on October 29, 1984, refers to service of an "Amended Disclosure Statement and Supplement Plan of Reorganization and Ballot." There is no affidavit of service relating to those disclosure documents that refer to a "1995 lease." BSL claims that it was unaware of and unaffected by the 1983 case. While relevant for some purposes, this court's ruling does not turn on these apparent notice defects and irregularities in service.

Less than one month after confirmation, on November 26, 1984, Taverns filed its second Chapter 11 petition ("the 1984 case"). In a repeat of recent history, Taverns again filed *pro se*. This dubious new filing by a freshly "rehabilitated" debtor appears to have been motivated by a desire to use Title 11 to stay a foreclosure of the building Taverns occupied but did not own. Whatever the filing impact, the foreclosure proceedings did not go forward at that time. Taverns was notified by the United States Trustee ("the U.S. Trustee") that a corporate debtor may not appear without counsel. After receiving no response from Taverns, the U.S. Trustee moved by order to show cause on January 2, 1985 seeking an order dismissing Taverns' 1984 case. The U.S. Trustee's motion was based upon the corporation's *pro se* appearance and upon Taverns' failure to file an Additional Local Bankruptcy Rule XI-2 affidavit, its schedules of assets and liabilities and its statement of financial affairs as required by section 521 of the Code. The 1984 case was dismissed and closed pursuant to an order signed on January 28, 1985 by Judge Abram of this court, sixty-four days after the 1984 petition was filed.

On August 22, 1985, BSL, the landlord, filed its own Chapter 11 petition. According to BSL, Taverns' lease expired on May 31, 1985, was not assumed in either of Taverns' previous cases pursuant to section 365 or in a plan of reorganization. Nevertheless, Taverns has refused to vacate the premises and turn over possession to BSL.

The parties have exchanged accusations and versions of the facts which raise implications of such a serious nature that the court has referred the matter to the Authorities for investigation. For example, BSL claims:

1. that the Supplement which purports to grant Taverns a ten year lease extension, describes a forged instrument;

2. that Taverns altered the version of the Supplement it included in Taverns' president Terence Dunne's affidavit ("Dunne") to this court in opposition to BSL's motion for partial summary judgment;

3. that Dunne falsely and fraudulently stated in documents submitted to the Department of Buildings that he was the owner of the building and as such, requested changes in the Certificate of Occupancy;

4. that the Department of Buildings issued a Peremptory Vacate Order to Taverns, which was modified based upon false and fraudulent representations made by Dunne and Taverns' vice president Michael Coyne ("Coyne");

5. that Taverns has operated since 1977 without a cabaret licence in violation of New York City Department of Consumer Affairs regulations and in violation of Taverns' lease;

6. that two of Taverns' officers conspired to unlawfully possess the premises and to harass other tenants;

7. that Taverns broke into the boiler room of the premises and stole and diverted hot water, even though the lease did not require BSL to provide hot water to Taverns;

8. that because of improper scheduling BSL received neither actual nor constructive notice of the 1983 case;

9. that Taverns never complied with the Amended Vacate Order;

For its part, Taverns claims in its answer:

1. that BSL extended Taverns' lease, in writing, from June 1, 1985 through May 31, 1995;

2. that BSL fraudulently refused to permit Taverns to exercise an option to purchase the building;

3. that BSL is estopped from asserting that the lease is not in effect because BSL failed to object to the statement in Taverns'

1983 case "Disclosure Statement *and Plan*" (emphasis added) that the lease expired on May 31, 1995.

BSL moved for partial summary judgment seeking *inter alia*, a determination that the Lease and extension had been terminated and an order for immediate turnover of the premises. In its statement pursuant to Local Rule 3(g), BSL asserted that Taverns filed its 1984 case on November 26, 1984 (the second case), and that Taverns failed to assume the lease and extension within 60 days or seek an extension of time to do so, as required by Code section 365(d)(3). BSL urges that the lease and (disputed) extension were automatically deemed rejected by Code section 365(d)(4). In its Local Rule 3(g) statement in response to BSL's 3(g) statement, Taverns creatively suggests that "[b]y listing the lease in its petition as an asset, and by performing its obligations under the lease during the pendency of the proceedings and thereafter Taverns assumed the lease." Furthermore, Taverns knew from its 1983 case that a corporation could not file *pro se*, yet, in 1984, it cavalierly ignored this mandate. Taverns now whimsically urges, by counsel that the 1984 case was a nullity because it was filed *pro se.*

Taverns subsequently cross-moved for partial summary judgment on its third counterclaim, which asserted that Taverns had assumed the lease in its 1983 case Disclosure Statement; that the plan provision for payment of prepetition rent owed BSL was an assumption of the lease by implication and that BSL is estopped from arguing that the lease was not assumed because BSL waived this ground by never objecting to Taverns' Disclosure Statement or Plan.

At a hearing held on the two partial summary judgment motions, this court granted summary judgment to BSL "as a matter of law," ruling that whatever interest Taverns had in the lease following the 1983 case was terminated by operation of

section 365(d)(4) in the 1984 case and found that "there is no relationship of landlord and tenant based upon the lease anymore." 1/8/86 Tr. at 28. The record was "so ordered" to allow Taverns to appeal expeditiously.

On January 15, 1986, Taverns moved by order to show cause for leave to reargue both its and BSL's motions for partial summary judgment or alternatively for relief from this court's order of January 8, 1986, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 9024. The order to show cause also extended Taverns' time to appeal from the court's January 8, 1986 ruling until five days after the hearing on the reargument motion. The time to take an appeal was further extended by stipulation to five days after the decision on the reargument motion.

Taverns' reargument motion was based upon the following "new facts":

1. that Taverns had neglected to call the court's attention to certain inconsistencies in BSL's complaint, being allegations by BSL on one hand that Taverns' lease expired in October 31, 1985 and on the other hand that "[u]pon information and belief, Taverns assumed the Lease during the [1983] Chapter 11 case or pursuant to its Plan of Confirmation."

2. that in spite of the court's ruling that there was no lease, BSL insisted after the January 8, 1986 hearing had concluded that Taverns was still obligated to pay its share of monies due and owing for fuel, boiler maintenance and repair, gas and real estate taxes. According to Taverns, its obligation to make these payments arose only under the lease as "additional rent," and thus if there was no lease, there could be no obligation. Taverns' attorney states in his Declaration accompanying the order to show cause that "[t]his inconsistency, in light of the court's [previous] ruling, taken together with the pleading, requires reconsideration." Declaration at 4.[2]

---

**2.** Taverns' motion to reargue apparently was made pursuant to Rule 59(b) of the Federal Rules of Civil Procedure. The grant of a motion under this rule permits a court to revisit all or

part of prior proceedings and to amend any findings of law or fact or its prior judgment as it sees fit. *See* 6A Moore's Federal Practice ¶ 59.07 at 59.70 (1984).

Giving Taverns the benefit of any doubt, the court granted Taverns' motion to reargue and deemed the hearing on the order to show cause to also be the hearing on reargument. Taverns rested on its moving papers. Based upon its consideration of the law and all the facts of this case, the Court on reargument declines to disturb its prior ruling that no current lease exists between BSL and Taverns.

## II. *Discussion of Law*

### A. *The Code Recognizes Two Ways to Assume or Reject An Unexpired Lease*

#### 1. *Assumption or Rejection Pursuant to a Plan of Reorganization*

An unexpired lease may be assumed or rejected in a plan of reorganization. Section 1123(b)(2) specifically provides that "a *plan* may ... subject to section 365 of this title, provide for the assumption, rejection or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section" (emphasis added). Section 1123 is a substantive checklist of the contents of a plan: subsection (a) prescribes required contents; subsection (b), permissive contents. No mention is made in this section of a disclosure statement being an appropriate vehicle for assumption, rejection or assignment.

Section 1125 is the sole Code section discussing disclosure statements and it requires only that the contents of the disclosure statement contain " 'adequate information' [which] means information of a kind, and in sufficient detail ... that would enable a hypothetical ... typical [claim holder] of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1) (1984). Section 1125 might be described as a non-rigid "how-to-inform" section. It is procedural in the sense that it, combined with the Rules of Bankruptcy Procedure, sets standards for disclosure content and solicitation.

By requiring the Court to evaluate a plan ("the court shall confirm a plan only if all of the following requirements are met") through the lens of section 1129, creditors are afforded due process and thus the plan may affect their rights. A disclosure statement, on the other hand, is evaluated only in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interests.

■ If the legislature had intended to afford the Disclosure Statement the same potential to control a party's rights that a plan has, approval of a Disclosure Statement doubtless would have redundantly required satisfaction of safeguards like those contained in section 1129. Congress in clear fashion set forth the ways that an executory contract or unexpired lease could be assumed. The section 1125 Disclosure Statement is plainly not one of these statutory vehicles. As the Second Circuit noted: "when the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words." *United States v. Holroyd,* 732 F.2d 1122, 1125 (2d Cir.1984)). *See also United States v. Payden,* 759 F.2d 203, 204 (2d Cir.1985) (citations omitted); *In re Colin,* 44 B.R. 806, 809 (Bankr.S.D.N.Y.1984).

■ No authority has been uncovered to support Taverns' suggestion that mentioning the lease in the disclosure statement is equivalent to assuming the lease in a plan. Taverns' reliance upon the Disclosure Statement amendments to compensate for its total failure to assume the lease in the Plan is consequently misplaced.

■ Neither has support been found for Taverns' proposition that a lease may be assumed by implication in a Plan. Although cases exist under section 70b and Rule 607 of the former Bankruptcy Act that allowed assumption of an unexpired lease "by implication, that is, by conduct short of filing a motion to assume ... [c]ourts [are] split over whether a trustee can still assume a lease ... by implication under [§ 365 of] the Code." *In re By-Rite Distributing, Inc.,* 55 B.R. 740, 742 n. 5 (D.Utah 1985). And no courts have addressed the issue raised by Taverns of implicit assumption in the Plan. Based, however, on the foregoing analysis, this court

holds that Taverns did not assume its lease under its confirmed Plan. The contentions of the parties though are irrelevant. As *Collier on Bankruptcy* ("Collier") notes, "[t]he plan *may* provide for the assumption ... of an [unexpired lease]. On the other hand, the contract may 'ride through' the plan as unaffected." 5 *Collier* ¶ 1123.-02[2][b] at 1123–18 (15th ed.). Because BSL failed to insist (knowingly or not), during the 1983 case that Taverns assume pursuant to either section 365 or section 1123, and because the lease was not assumed under the terms of the Plan, it survived Taverns' 1983 case. The survival of the lease was not premised, as Taverns suggests, upon BSL's failure to object to the Plan's proposed treatment of BSL's claim, but rather it survived by operation of law. Ironically, the clearly undisputed lease term that passed unscathed through Taverns' 1983 case has now expired (October 1985). The alleged 1995 lease extension is still not free from doubt and remains subject to attack on due process and legitimacy grounds referred to earlier.

### 2. *Assumption or Rejection Pursuant to Section 365*

Included among the statutory provisions amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAF-JA") is section 365, which became effective as to cases filed ninety days after July 10, 1984. Taverns' 1984 case was filed subsequent to this ninety day period and so the BAFJA amendments apply.

Section 365(d)(4) provides that a nonresidential lease of real property is deemed rejected if it is not affirmatively assumed or rejected by a debtor/lessee within sixty days after a chapter 11 petition is filed or within such extension of time within the sixty day period as the court grants. 11 U.S.C. § 365(d)(4) (1984). *See In re By-Rite Distributing, Inc.; In re T.F.P. Resources, Inc.,* 13 B.C.D. 1104 (Bankr.S.D.N.Y.1985). Section 365(d)(4) further provides that once a deemed rejection occurs, "the [debtor] shall immediately surrender such nonresidential real property to the lessor."

■ Having determined that some form of the lease "passed through" Taverns'

1983 case, a simple mathematical calculation indicates that Taverns did not assume the lease in the 1984 case. The 1984 case was filed on November 26, 1984. Because Taverns took no action by January 24, 1985, sixty days from the filing date, the lease was deemed rejected by operation of law. *See, e.g., In re Alba Press, Inc.,* 55 B.R. 127, 129 (Bankr.E.D.N.Y.1985); *In re Bon Ton Restaurant and Pastry Shops, Inc.,* 52 B.R. 850 (Bankr.E.D.Ill.1985); *In re Dulan,* 52 B.R. 739 (Bankr.C.D.Cal. 1985). While compliance with the mandate of section 365(d)(4) requires alacrity, it is not a difficult requirement to meet. The statute is demanding, but clear. BSL was entitled to be the beneficiary of an immediate surrender of the premises.

In an attempt to mitigate the effect of the statute, Taverns raised what may be characterized as a waiver argument based upon the following rent payment history.

■ In December, 1981, 15 Irving Associates, the mortgagee, commenced a mortgage foreclosure action. A receiver was thereafter appointed by the state court to oversee the operation of the building. According to Taverns, subsequent to January 24, 1985, it tendered rent to an individual who Taverns represented to be the Receiver's agent. Taverns claims that its tender was accepted and that this worked a waiver of the provisions of section 365(d)(4). Were the court to accept this version of the facts, under the rationale of the well-reasoned opinion in *In re T.F.P.,* a waiver may indeed have occurred. *T.F.P.* held that the lessor's acceptance of administrative rent after the sixty day period in section 365(d)(4) expired constituted a waiver of the lessor's right to consider the lease "deemed rejected" by operation of law. BSL, however, contends that the monies were deposited in the Receiver's account without his knowledge, that the purported "agent" was the building superintendent, and that upon discovering the deposit, the receiver immediately segregated the funds in an escrow account. BSL thus urges and

we concur that absent a clear acceptance of the monies, no waiver could have occurred.[3]

### B. *Rejection of A Lease Under § 365(d)(4) Does Not Revest It in the Estate If the Case is Subsequently Dismissed*

As noted earlier, Taverns' 1984 case was dismissed on January 28, 1985. Taverns raised what initially appears to be an arresting argument concerning the interplay of §§ 365(d)(4) and 349 of the Code.

Section 349 provides that upon dismissal of a case, property of the estate revests in the former debtor. 11 U.S.C. § 349 (1984). Claiming that the effect of § 349 is to treat the dismissed case as though it never existed, Taverns mistakenly insists that it was automatically re-vested with the lease upon the dismissal of the 1984 case. Having availed itself of the protection offered by the Code and the automatic stay by filing the 1984 case, Taverns cannot now be heard to complain because the operation of other Code provisions and its own inaction resulted in the loss of the lease.

■■■ *Collier* notes that "[t]he objective of section 349(b) is to restore all property rights, *as far as practicable,* to the positions they occupied at the commencement of a case that was dismissed under one of the operative sections of title 11." 2 *Collier* ¶ 349.03 at 349–8. Taverns fails to realize that section 349 is a two-edged sword. While it operates to restore property rights to their initial positions, it also enables the court to "order otherwise for cause." Furthermore, section 349(b) lists the Code sections whose operative impact is specifically undone unless the court orders otherwise. Thus dismissal under section 349(b) reinstates in itemized fashion: proceedings or custodianships that were superseded by the bankruptcy case; avoided transfers; voided liens; vacates any order,

judgment or transfer ordered as a result of the avoidance of a transfer; and revests the property of the estate in the entity in which the property was vested at the commencement of the case. *Id.* Section 365 is not one of the enumerated sections affected by a section 349(b) dismissal.

■■■ Construing section 349 as Taverns would have this court do would utterly defeat the intent of section 365(d)(4). The two sections must be harmonized so that one provision does not annul the other. In light of the flexibility inherent in section 349, section 365(d)(4) must be given effect in such a way as to prevent a lessee's bankruptcy from holding a nondebtor lessor hostage to repeated filings. Although BSL has requested that this court give effect to the surrender of possession clause of section 365(d)(4), we are not inclined to reach back into a closed proceeding assigned to another judge involving a debtor not presently before this court in that capacity, for the purpose of directly ordering the dispossess. That function is better left to the state court as a consequence of our determination of the nonexistence of the lease.

### Conclusion

For the foregoing reasons, on reargument this court declines to alter its initial rulings on the motions for summary judgment and reiterates its holdings that:

1. BSL's motion for partial summary judgment is granted to the extent set forth hereinafter and Taverns' motion for partial summary judgment on the third counterclaim is denied;

2. There is no longer a landlord-tenant relationship based upon the lease;

---

**3.** Two weeks after the hearing on Taverns' reargument motion BSL, Taverns and Gerald M. Labush, the former Receiver, presented for our signature a stipulation providing for the turnover of funds by the former Receiver and payment of use and occupancy by Taverns pending the resolution of the adversary proceeding. This Stipulation was "so ordered" by the court

on February 6, 1986, and is without prejudice to any of the claims in the adversary proceeding. The determination that no waiver occurred is not affected by these events that transpired subsequent to the hearing. As a result of the foregoing the debtor has voluntarily dismissed its suit as to Labush and 15 Irving Associates.

3. BSL is free to seek any and all appropriate possessory remedies to which it may be entitled in state court;

4. Defendants Taverns, Dunne and Coyne's First and Third Counterclaims are dismissed. Their Second Counterclaim survives.

It is SO ORDERED.