**In re: AMES DEPARTMENT STORES, INC., Eastern Retailers Service Corporation, et al., Debtors.**

**BOND STREET ASSOCIATES LIMITED, Plaintiff,**

v.

**The TJX COMPANIES, INC., Defendants.**

**Bankruptcy Nos. 90–11233 through 11285 (JAG). Adv. No. 91–6699A.**

United States Bankruptcy Court, S.D. New York.

Jan. 12, 1993.

See also, 136 B.R. 353, 136 B.R. 357.

Luc A. Despins, Skadden, Arps, Slate, Meagher & Flom, New York City, for debtor.

Samuel Kirschenbaum, Kirschenbaum & Kirschenbaum, P.C., Garden City, N.Y., for plaintiff.

Douglas H. Meal, Ropes & Gray, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

The question presented to this Court is whether The TJX Companies, Inc. ("TJX") remains liable for certain lease obligations to Bond Street Associates, Limited ("Bond Street"), in light of developments in the bankruptcy of Ames Department Stores, Inc. ("Ames"), an assignee of TJX. By a lease dated April 8, 1985 (the "Lease"), Bond Street's predecessors in interest leased certain real property located in Batavia, New York to TJX (then known as the Zayre Corporation). On October 25, 1985, TJX assigned its interest under the lease to Zayre Central, which at that time was a wholly-owned subsidiary of TJX. On October 28, 1988, Ames purchased the stock of Zayre Central as part of a larger acquisition of all the assets and business of the Zayre Stores division of TJX. Approximately eight months later, in April of 1990, Ames and its 52 subsidiaries filed petitions for reorganization pursuant to 11 U.S.C. Chapter 11. As part of that reorganization effort, Ames rejected the Lease pursuant to 11 U.S.C. § 365, effective October 9, 1990, by order of the court dated October 15, 1990.

That rejection touched off a series of letters between Bond Street and TJX which are of particular significance in this proceeding. By letter dated October 22, 1990, Bond Street informed TJX that:

> [I]t is not our intention to terminate the lease, or your continuing liability thereunder, but that we look to you for the payment of all of the rent reserved under the lease, together with your compliance with all other obligations imposed upon the Tenant by the provisions of the lease....

Several more letters were exchanged in which Bond Street insisted that it was not terminating the Lease, and wherein TJX asserted that the Lease had been terminated by Ames' rejection.

Finally, this activity culminated in the commencement by Bond Street of an action in the Supreme Court of the State of New York, County of Nassau, which, upon motion by TJX, was removed to the U.S. District Court, Eastern District of New York. Upon TJX's further motion to have this proceeding referred to the bankruptcy court, the U.S. District Court transferred the proceeding to the U.S. District Court for the Southern District of New York, which subsequently referred it to this bankruptcy court. Because this is a proceeding related to the Ames reorganization case, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and, by

their conduct, the parties have indicated their consent to this Court's entry of final orders and judgments in accordance with § 157(c)(2).

In early 1992, Bond Street moved for summary judgment on Count I of its complaint, seeking recovery from TJX of monthly rental payments and real estate taxes due and owing Plaintiff as of Ames' rejection of the Lease, as well as continuing defaults of such obligations, together with interest and attorneys' fees.

In ruling on a motion for summary judgment, the court shall render judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Bky.P. 7056(c).

The most relevant sections of the Lease are Article XIII regarding defaults and Article XVII regarding assignments. Those provisions in part are as follows:

13.1 If Tenant shall default in the payment of rent or any other sum of money payable by Tenant to Landlord and if Tenant shall fail to cure such default within ten (10) days after receipt of notice of such default from Landlord, without waiving any claim for breach of agreement, Landlord may send notice to Tenant of the termination of the term of this lease and on the fifth day next following the date of the sending of such notice, the term of this lease shall terminate, Tenant hereby waiving all rights of redemption.

. . . . .

13.3 After any assignment of Tenant's interest in this lease, Landlord shall not exercise any rights or remedies under this Article XIII on account of any default in payment of any rent or other sum of money unless Landlord shall give notice to the tenant named herein, as well as the tenant in possession, of such default and the opportunity to cure each such default within the period of time after such notice provided in Section 13.1 of this lease. After such notice, if the term of this lease shall be terminated pursuant to the provisions of this Article XIII, then the tenant named herein shall not be liable for the payment of any rent or for the performance or observance of any agreements or conditions to be performed or observed after the date of such termination unless about the time of such termination Landlord shall have offered to the tenant named herein a lease for the balance of the term of this lease upon the provisions of this lease contained.

. . . . .

17.1 Notwithstanding any assignment of Tenant's interest in this lease or any subletting of the whole or any part of the Demised Premises, Tenant shall remain primarily liable for the performance of all agreements of Tenant hereunder, except as expressly otherwise provided in Section 13.3.

On the primary issue of liability under the Lease, Bond Street relies heavily on Section 17.1 for its contention that TJX remains liable for these obligations despite the assignment to Zayre Central. In opposition, TJX argues that for various reasons the Lease has been terminated, requiring Bond Street to offer TJX a new lease pursuant to Section 13.3. Because Bond Street failed to do so, TJX asserts that it is thereby relieved of all liability under the Lease for the period following termination.

 TJX puts forth two reasons why the Lease has been terminated. First, TJX argues that the rejection of the Lease by Ames in its reorganization efforts terminated this Lease. Although there is no consensus on this issue, this Court believes that the better reasoned decisions find that rejection of a lease does not equate to termination, but rather is tantamount to a breach thereof. *See, e.g., Societe Nationale Algerienne v. Distrigas Corp.*, 80 B.R. 606 (D.Mass.1987); *In re Storage Technology Corp.*, 53 B.R. 471 (Bankr. D.Colo.1985); *In re Picnic 'N Chicken, Inc.*, 58 B.R. 523 (Bankr.S.D.Cal.1986). Therefore, Ames' rejection of the Lease did not automatically terminate the Lease.

TJX's alternative argument is based on Bond Street's alleged election to terminate the Lease by filing a proof of claim pursuant to 11 U.S.C. § 502(b)(6) in Ames' bankruptcy case. TJX maintains that, even if rejection does not terminate a lease, a landlord may subsequently choose to do so by filing a proof of claim in the underlying bankruptcy case. In support thereof, TJX has provided a copy of Bond Street's proof of claim # 10922 (the "Proof of Claim") in which Bond Street has allegedly terminated the Lease by implication. While this argument is tempting, this Court is not convinced that the Proof of Claim either terminates the Lease or acknowledges its previous termination. The language used in the Proof of Claim itself explicitly indicates that Bond Street had not terminated the Lease, but is only making claim for Debtor's *rejection* thereof. The reference to § 502(b)(6) most likely results from Bond Street's reliance on *In re Modern Textile, Inc.*, 900 F.2d 1184 (8th Cir.1990), which treats § 502(b)(6) as a limit on the amount a lessor may claim following *rejection* of an unexpired lease.

Based on the foregoing, this Court finds that Bond Street's Proof of Claim does not act to terminate the underlying Lease. In fact, the recovery of any sum from Ames by Bond Street as a result of the Proof of Claim can only enhance the position of TJX by reducing its liability. It may well be that the amounts sought therein may not be appropriately recoverable from the estate, but that issue is not before the Court and, in any event, is one for Ames to argue.

Finally, TJX cites various authorities for "general rules" that would classify TJX as a surety of Zayre Central. While those rules may apply in general, they do not apply here where this contract specifically provides in Section 17.1 that TJX, as Tenant, is to remain primarily liable for the performance of all agreements notwithstanding any assignment of its interest. Moreover, any discharge of Ames' liability through the bankruptcy proceeding does not affect TJX as co-debtor or guarantor. 11 U.S.C. § 524(e).

Because this Court finds that Bond Street did not terminate the Lease or otherwise release TJX, this Court finds TJX directly responsible to Bond Street for full compliance with the Lease, and grants partial summary judgment to Bond Street to that effect. There remain disputed factual issues, due in part to TJX's inability to complete its discovery, regarding the amount of damages and mitigation thereof which require an evidentiary hearing.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bky.P. 7052.

An appropriate order shall issue.

### ORDER

Bond Street Associates, Ltd. ("Bond Street") has moved for summary judgment on Count I of its complaint regarding the liability of the TJX Companies, Inc. ("TJX"), as tenant, under a lease which TJX has assigned. As to TJX's liability, this Court finds no genuine issues of material fact, and further finds that Bond Street is entitled to judgment as a matter of law. There remain certain disputed factual issues regarding the amount of damages and any mitigation thereof. Therefore, in accordance with a Memorandum of Decision executed on even date herewith, it is hereby

ORDERED that Bond Street is granted partial summary judgment on Count I of its complaint as to liability, and it is further

ORDERED that summary judgment is denied as to damages, which issue will require an evidentiary hearing to be held at the Court's earliest convenience.