**In re TRI–GLIED, LIMITED, d/b/a Park Avenue Cleaners, Debtor.**

**Bankruptcy No. 194–18657–352.**

United States Bankruptcy Court,
E.D. New York.

March 31, 1995.

Goldberg, Pines & Ochs by Martin P. Ochs, New York City, for debtor.

Kera & Graubard by M. David Graubard, New York City, for landlord.

## DECISION ON MOTION TO EXTEND TIME TO ASSUME OR REJECT LEASE PURSUANT TO § 365 AND CROSS MOTION TO VACATE THE § 362 STAY

MARVIN A. HOLLAND, Bankruptcy Judge:

Tri–Glied Limited, d/b/a Park Avenue Cleaners, the debtor and debtor-in possession herein, (hereinafter, the "Debtor") has moved for an order, pursuant to 11 U.S.C. § 365(d)(4), extending its time to assume or reject a lease of nonresidential real property under which it is the lessee. Manhasset Park Company (hereinafter, "MPC"), the lessor, objects on the ground that having been deemed rejected pursuant to 11 U.S.C. § 365(d)(4) in the Debtor's prior chapter 11 case, the lease terminated prior to the commencement of this case and cross moves pursuant to 11 U.S.C. § 362(d) to vacate the automatic stay.

For the reasons set forth herein, the Debtor's motion is denied and the motion of MPC is granted.

*FACTS:*

On May 12, 1994, while a lessee of nonresidential real property (hereinafter, the "Lease") located at 16–22 Park Avenue, Manhasset, New York (hereinafter, the "Premises"), the Debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code (hereinafter, the "first Chapter 11"). MPC was the lessor under the Lease.

Allegedly unaware of the Debtor's bankruptcy filing, MPC commenced a landlord-tenant proceeding in the District Court, Nassau County on May 15, 1994. Nothing further appears to have been done in that court during the pendency of the first Chapter 11.

During the first Chapter 11, the Debtor neither moved to assume or reject the Lease, nor to extend its time to do so. Thus, pursuant to 11 U.S.C. § 365(d)(4), the Lease was "deemed rejected."

On September 29, 1994, on motion by the United States Trustee and on consent of the Debtor, the first Chapter 11 was dismissed.

Following the dismissal, MPC continued with its landlord-tenant proceeding. A hearing in that proceeding was scheduled for October 24, 1994.

On October 6, 1994, the Debtor's bookkeeper tendered a check to MPC for the rent due for October 1994; MPC refused to accept it. The Debtor then sent the same check by certified mail which was delivered to MPC on October 11, 1994. Again, MPC refused to accept the check and returned it to the Debtor.

On October 21, 1994, three days before the scheduled hearing in the landlord-tenant proceeding, this case was commenced when the Debtor filed its second petition for reorganization.

On November 8, 1994, the Debtor delivered two checks which were accepted by MPC for post petition rent payments. MPC claims that it believed it was obligated to accept such checks since the Debtor had filed a new Chapter 11 case.

On November 14, 1994, MPC engaged counsel to represent it in the Debtor's second bankruptcy case and on November 15, 1994, MPC's counsel informed Debtor's counsel of MPC's position that there was no longer a lease to be assumed in this case since it had been deemed rejected in the first Chapter 11 case.

The Debtor brought its motion dated November 23, 1994 to extend its time to assume or reject the Lease. MPC then moved for relief from the automatic stay by motion dated December 15, 1994.

*DISCUSSION:*

Section 365(d)(4) of the Bankruptcy Code provides in pertinent part:

[I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

It is undisputed that pursuant to 11 U.S.C. § 365(d)(4) the Lease was deemed rejected

in the first Chapter 11 and that the Debtor remains in continuous possession of the Premises despite that section's surrender mandate.

In support of its 11 U.S.C. § 365(d)(4) motion to extend its time to assume or reject the Lease, the Debtor asserts that the Lease continues to exist because: (1) the deemed rejection of the Lease did not terminate the Lease, (2) the dismissal of the first Chapter 11 had the effect pursuant to 11 U.S.C. § 349(b)(3) of restoring the Debtor and MPC to the positions they each enjoyed before the filing of that case and therefore, the Lease should be deemed to have been neither rejected nor terminated, and (3) MPC's conduct subsequent to the deemed rejection acted as a waiver of the rejection.

MPC argues that the deemed rejection of the Lease terminated the Lease and that such termination was not affected by the dismissal of the Debtor's prior bankruptcy case. According to MPC, "[t]he deemed rejected Lease in effect 'died' in the first Chapter 11 case and was not 'revived' upon the dismissal thereof under Bankruptcy Code § 349." MPC's Memorandum of Law at page 4.

For the reasons that follow we hold:

(1) the Debtor's failure to assume or reject the Lease in the first Chapter 11 [or seek an extension to do so] resulted in a breach of the Lease;

(2) the Debtor's failure to assume or reject the Lease in the first Chapter 11 [or seek an extension to do so] did not result in a termination of the Lease;

(3) the Debtor's failure to assume or reject the Lease in the first Chapter 11 [or seek an extension to do so] resulted in a termination of the Debtor's right to possession of the Premises;

(4) the Debtor's right to possession of the Premises did not revest in the Debtor upon the dismissal of the first Chapter 11;

(5) MPC's post-rejection conduct did not amount to a waiver of its rights under 11 U.S.C. § 365(d)(4);

(6) the Debtor has not lost its right to seek assumption of the Lease;

(7) assumption of the Lease would not restore the right to possession of the Premises which the Debtor lost in the first Chapter 11, and therefore, no benefit would accrue to the Debtor upon assumption of the Lease; thus, cause does not exist under 11 U.S.C. § 365(d)(4) to extend the Debtor's time to assume or reject the Lease;

(8) MPC is entitled to immediate possession of the Premises and an order directing the debtor to surrender possession forthwith; and

(9) to the extent that MPC may be stayed from regaining possession of the Premises it is entitled to have that stay terminated.

## THE "LEASE" DID NOT TERMINATE IN THE DEBTOR'S FIRST CASE

Many courts have addressed the effect that the deemed rejection in the Debtor's first case had on the Lease. While there is agreement that rejection of a lease constitutes a breach pursuant to 11 U.S.C. § 365(g)[1], there is no general consensus as to whether rejection under 11 U.S.C. § 365(d)(4) constitutes a termination. *See, e.g., In re Austin Development Co.*, 19 F.3d 1077 (5th Cir.1994) (deemed rejection of a lease under 11 U.S.C. § 365(d)(4) results in a breach of a lease but not a termination thereof); *In re Hirschhorn*, 156 B.R. 379 (Bankr. E.D.N.Y.1993) (same); *In re Storage Technology Corp.*, 53 B.R. 471 (Bankr.D.Colo. 1985) (same); *In re Ames Department Stores*, 148 B.R. 756 (Bankr.S.D.N.Y.1993) (same); *but see, e.g., In re 6177 Realty Assocs.*, 142 B.R. 1017 (Bankr.S.D.Fla.1992) (a lease deemed rejected under 11 U.S.C. § 365(d)(4) is thereby terminated); *In re Giles Assocs.*, 92 B.R. 695 (Bankr.W.D.Tex. 1988) (same); *In re Bernard*, 69 B.R. 13 (Bankr.D.Haw.1986) (same); *In re Argonaut Fin. Servs.*, 164 B.R. 107, n. 2 (N.D.Cal.1994) (same).

Not surprisingly, the Debtor cites many of the cases above which hold that a deemed rejection results in a mere breach of a lease.

---

**1.** 11 U.S.C. § 365(g) provides in pertinent part that "the rejection of an … unexpired lease of the debtor constitutes a breach of such … lease …".

The Debtor argues that the deemed rejection resulted in a mere breach of the Lease, and therefore at the commencement of this case, the Lease could be assumed or rejected in this case like any other lease breached prepetition.

We agree with the cases cited by the Debtor that the deemed rejection of a lease under 11 U.S.C. § 365(d)(4) constitutes a mere breach of the lease and not a termination.

In so holding, we follow the reasoning of the Fifth Circuit Court of Appeals in *Austin* and a persuasive law review article by Professor Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection"*, 59 U.Colo.L.Rev. 845 (1988), cited in *Austin*, which define rejection as nothing more than the estate's method of declining to become obligated under the terms of a particular lease. Professor Andrew states:

> rejection is not the revocation or repudiation or cancellation of a contract or lease, nor does it affect contract or lease liabilities ... [r]ejection ... merely means that the bankruptcy estate itself will not become a party to [the contract or lease]. Simply put, the election to 'assume or reject' is the election to assume or not to assume; 'rejection' is the name for the latter alternative.

Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection"*, 59 U.Colo. L.Rev. at 848–49.

2. In *Austin*, the dispute as to the effect that a deemed rejection had on a lease involved a non-debtor landlord and a non-debtor bank. The debtor in that case was a lessee under a ground lease for nonresidential real property and sublessor of a movie theater which it had built on the property. The debtor had assigned its interest in the ground lease and the theater's income stream to a bank as security for various loans. During the chapter 11 case the ground lease was deemed rejected under 11 U.S.C. § 365(d)(4). Thereafter, the landlord filed a motion and complaint in the bankruptcy court requesting that the court terminate (1) the debtor's interest as lessee of the ground lease, (2) the bank's interest, pursuant to a deed of trust, on the debtor's leasehold interest, and (3) the bank's interest in the sublease. The bank filed a counterclaim asking the court to order the landlord to enter into a ground lease with the bank pursuant to the lease which granted the debtor permission to mortgage its leasehold estate and further granted leasehold mortgagees numerous rights as third-party beneficiaries under the ground lease. Both the bankrupt-

Rejection is the antithesis of assumption. In rejecting a lease, the estate merely declines to assume it. By analogy, the trustee in rejecting a lease is merely abandoning the leasehold in the same way in which he/she would abandon any other property of the estate. *See In re Lovitt*, 757 F.2d 1035, 1041 (9th Cir.1985) ("The trustee's power to reject those executory contracts which he finds burdensome to the bankrupt's estate is an extension of his power to renounce title to and abandon burdensome property which is already a part of the estate."). By abandoning property, the property is not extinguished but rather it reverts to the position it occupied prior to the bankruptcy. Similarly, rejection of a lease does not extinguish the lease.

### THE DEBTOR'S RIGHT TO POSSESSION OF THE PREMISES TERMINATED IN ITS FIRST CASE

■ Our analysis above did not address the rights, if any, that a debtor-lessee retains in a rejected lease. Nor have we been able to find any reported decision in which a deemed rejection has been held to result in a mere breach of a lease [and not a termination thereof], where the court also has had to address the post-rejection rights of a debtor-lessee. Cases such as *Austin* [2] and *Hirschhorn* [3], concern the rights that the non-debt-

cy and district courts held that the "deemed rejection" of the lease terminated the ground lease and thereby terminated the bank's rights under the ground lease and the bank's assignment of the theater sublease. The Fifth Circuit Court of Appeals reversed holding that the ground lease was not terminated and therefore the bank's interest in the ground lease and the theater's income stream were not extinguished. With respect to the debtor, the *Austin* Court noted in passing that 11 U.S.C. § 365(d)(4) "stipulates that when [the debtor] failed timely to assume or reject its lease ..., the lease was breached *and [the debtor] was required to surrender the premises* ...". However, except for that statement, the *Austin* Court did not address, nor was the court called upon to address, the rights, if any, that a debtor-lessee retains post-rejection. The debtor-lessee's rights post-rejection were not in issue.

3. *In Hirschhorn*, a case decided in this district, the issue was whether a non-compete clause in the lease in favor of the non-debtor landlord

or retains in a lease upon its deemed rejection.

In contrast, all of the cases which *have* addressed a debtor-lessee's post-rejection rights under a rejected lease have held that the debtor-lessee's possessory right under the lease terminated upon the lease being deemed rejected. *See, e.g., In re Elm Inn, Inc.* 942 F.2d 630, 633 (9th Cir.1991) ("By operation of law, the debtor's possessory interest in the lease terminated [on the date the lease was deemed rejected], and the lessor's right to immediate surrender of the property simultaneously accrued."); *In re BSL Operating Corp.*, 57 B.R. 945, 947 (Bankr.S.D.N.Y.1986) (the court held that upon a lease being deemed rejected "the tenant's leasehold right to possession of the premises [had] legally expired" and there was no longer a landlord-tenant relationship based on the lease); *In re Re–Trac Corp.*, 59 B.R. 251, 257 (Bankr.Minn.1986) (upon a lease being deemed rejected under 11 U.S.C. § 365(d)(4), "the lessee no longer has a possessory interest in the unexpired lease ...").

We find convincing support in the language of 11 U.S.C. § 365(d)(4) for following *Elm Inn, Inc., BSL Operating Corp.* and *Re–Trac Corp.* and holding that upon rejection of the Lease in the Debtor's first case, the Debtor's right to possess the Premises terminated.

To hold otherwise and say that a debtor-lessee retains the right to possess the leased premises following the deemed rejection of said lease would not only fly in the face of the plain meaning of 11 U.S.C. § 365(d)(4) but also would be in clear conflict with the purpose of the section. Section 365(d)(4) was added to the Bankruptcy Code in 1984 as one of the so-called "shopping center" amendments, enacted as part of the 1984 Bankruptcy Amendments and Federal Judgeship Act. Before 1984, debtors in possession had no fixed deadline for assuming or rejecting unexpired nonresidential leases of real property. The primary purpose of enacting 11 U.S.C. § 365(d)(4) "was to protect lessors (particularly shopping center operators) from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases." *In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1181 (9th Cir.1988). In *In re Bernard*, 69 B.R. at 14, the court in discussing the legislative history and purpose of 11 U.S.C. § 365(d)(4) noted that one purpose of the requirement of immediate surrender "was to enable the lessors to once again rent the premises and to earn income from the demised premises."

*11 U.S.C. § 349(b)(3)*

■ Having determined that the Debtor's right to possess the Premises terminated in its first case, we are left to determine the effect of the subsequent dismissal upon that right.

Section 349(b)(3) of the Bankruptcy Code provides:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

MPC cites *BSL Operating Corp.*, in support of its position that the dismissal of the Debtor's first case did not "revive" the Debtor's rights under the Lease. In *BSL Operating Corp.*, the debtor was a lessor of a lease of nonresidential real property. Prior to the commencement of the lessor's bankruptcy, the tenant under the lease had filed two sequential chapter 11 petitions. "The lease in at least some form survived the [tenant's] first case by fortuitous operation of law ...". *BSL Operating Corp.*, 57 B.R. at 947[4]. During the tenant's second bankruptcy case, the

---

survived the deemed rejection of the lease in the debtor's bankruptcy case. In holding that the deemed rejection constituted a mere breach of the lease and therefore, the non-compete clause in favor of the landlord survived the rejection, Judge Duberstein, like the *Austin* Court, was not called upon to determine the effect that a deemed rejection had on a debtor-lessee's affirmative rights under the rejected lease. For purposes of our decision, it is noteworthy, that from the court's decision in *Hirschhorn* it appears that two months prior to the court's decision, the debtor-lessee had moved from the leased premises.

**4.** The 1984 amendments to the Bankruptcy Code did not apply to the tenant's first case which had been filed in 1983.

tenant failed to timely assume or reject the lease and the lease was deemed rejected. However, the tenant did not surrender the leased property back to the lessor and upon motion by the United States Trustee, the tenant's second bankruptcy case was dismissed. Thereafter, the debtor-lessor commenced its Chapter 11 case and moved for immediate possession of the leased property on the ground that the lease was deemed rejected in the tenant's second bankruptcy case.

The court in *BSL Operating Corp.* held that the "tenant's leasehold right to possession of the premises [had] legally expired" in the tenant's second bankruptcy case, *id.*, and that under 11 U.S.C. § 365(d)(4), "[the lessor] was entitled to be the beneficiary of an immediate surrender of the premises" upon the lease being deemed rejected, *id.* at 951.

The court then rejected the tenant's assertion that pursuant to 11 U.S.C. § 349(b) it was automatically re-vested with the lease upon the dismissal of its second bankruptcy case, stating:

> [the tenant] fails to realize that section 349 is a two-edged sword. While it operates to restore property rights to their initial positions, it also enables the court to "order otherwise for cause." Furthermore, section 349(b) lists the Code sections whose operative impact is specifically undone unless the court orders otherwise. Thus dismissal under section 349(b) reinstates in itemized fashion: proceedings or custodianships that were superseded by the bankruptcy case; avoided transfers; voided liens; vacates any order, judgment or transfer ordered as a result of the avoidance of a transfer; and revests the property of the estate in the entity in which the property was vested at the commencement of the case. Section 365 is not one of the

enumerated sections affected by a section 349(b) dismissal.

*Id.* at 952.

Accordingly, on facts similar to those we now face, the court in *BSL Operating Corp.*, in addition to holding as we do that rejection under 11 U.S.C. § 365(d)(4) terminates a lessee's possessory right in leased premises, held that the termination was not affected by the dismissal of the tenant's bankruptcy case.

Moreover, the court in *BSL Operating Corp.* held:

> Construing section 349 as [the tenant] would have this court do would utterly defeat the intent of section 365(d)(4). The two sections must be harmonized so that one provision does not annul the other. In light of the flexibility inherent in section 349, section 365(d)(4) must be given effect in such a way as to prevent a lessee's bankruptcy from holding a nondebtor lessor hostage to repeated filings.

*Id.*

While we agree with the ultimate result reached in *BSL Operating Corp.*, as to 11 U.S.C. § 349(b)(3), we respectfully disagree with its reasoning.

■ First, we have no evidence that the dismissal order in the Debtor's prior bankruptcy case provided that the revesting provisions of 11 U.S.C. § 349 would be inoperative. Accordingly, the language in 11 U.S.C. § 349 which allows a court for cause to order that the effect of a dismissal stated therein is inapplicable is irrelevant to the case at bar.[5]

Second, we respectfully decline to follow the reasoning in *BSL Operating Corp.* that since 11 U.S.C. § 365 is not one of the sections enumerated in 11 U.S.C. § 349(b)(1) and/or (2) that its impact therefore is necessarily not undone by 11 U.S.C. § 349(b). Each subsection of 11 U.S.C. § 349(b) is independent of each other. To hold that 11

---

**5.** Although the court in *BSL Operating Corp.* initially noted that "[w]hile [11 U.S.C. § 349] operates to restore property rights to their initial positions, it also enables the court to 'order otherwise for cause'", *BSL Operating Corp.* 57 B.R. at 952, it does not appear from the court's decision that the court which dismissed the tenant's bankruptcy case did in fact "order otherwise for cause". We read that statute to require the

"order otherwise for cause" to come from the court which orders the dismissal rather than from some other court at some later date which does not have before it either the knowledge of the previously dismissed case or the ability to preserve the rights of all of the parties in the previously dismissed case to appeal from the "otherwise" provision.

U.S.C. § 349(b) only applies to those sections of the Bankruptcy Code specifically enumerated in 11 U.S.C. § 349(b)(1) and/or (2) is to totally ignore and render meaningless 11 U.S.C. § 349(b)(3).

Finally, we respectfully disagree with the court in *BSL Operating Corp.* that "[c]onstruing section 349 as [the tenant] would have this court do would utterly defeat the intent of section 365(d)(4)". *BSL Operating Corp.* 57 B.R. at 952. In that case, as well as in our Debtor's first bankruptcy case, each lessor could have sought an order of dismissal without a revesting.

■ Turning to 11 U.S.C. § 349(b)(3), the Debtor asserts that "[i]t is without question that the Debtor's right to occupy the Premises constitutes a property right which clearly falls within the scope of [11 U.S.C. § 349(b)(3) ]." Debtor's Memorandum of Law at page 4. The Debtor argues that the plain meaning of 11 U.S.C. § 349(b)(3) "revests the parties ... with the *property rights they had immediately before the commencement* of the Debtor's first Chapter 11 case [emphasis added]." *Id.* However, 11 U.S.C. § 349(b)(3) "operates only as to the property of the estate which remains property of the estate on the date of dismissal." *In re Depew,* 115 B.R. 965, 972 (Bankr.N.D.Ind.1989). Thus, under 11 U.S.C. § 349(b)(3), it is only "property of the estate", determined as of the date of dismissal, which revests in the entity who was vested with such property immediately prior to the case.

At the commencement of the Debtor's first case, the Lease and the Debtor's right to possession under the Lease became property of the estate. *See In re Alert Holdings,* 148 B.R. 194, 202 (Bankr.S.D.N.Y.1992). During the first sixty (60) days following the commencement of the Debtor's first case, the *right* to possess the Premises remained property of the estate. However, upon the deemed rejection of the Lease, this *right* of possession terminated. Accordingly, as of the dismissal of the Debtor's first case, "property of the estate" did not include the right to possession of the Premises. Since it is only "property of the estate" *as of the date of dismissal* that revests upon dismissal, the right to possession of the Premises did not revest in the Debtor upon the dismissal of its first case.

*WAIVER*

■ The Debtor's final argument is that MPC's conduct subsequent to the deemed rejection acted as a waiver of the rejection and as a result the Lease continues to exist. Specifically, the Debtor asserts that MPC's acceptance of two rent payments post-petition for the period of October 21 through October 31, 1994 (the prorated post-filing portion of the month of October 1994) and for the full month of November 1994, constitutes a waiver of MPC's right to argue that the Lease had previously been deemed rejected.

Courts are divided as to whether the automatic rejection provided under 11 U.S.C. § 365(d)(4) can be waived by a lessor's post-rejection conduct and in particular, its post-rejection acceptance of rent. *In re Lew Mark Cleaners Corp.,* 86 B.R. 331 (Bankr. E.D.N.Y.1988) (lessors' can waive application of 11 U.S.C. § 365(d)(4) by post-rejection conduct); *In re T.F.P. Resources, Inc.,* 56 B.R. 112 (Bankr.S.D.N.Y.1985) (same); *In re THW Enterprises, Inc.,* 89 B.R. 351 (Bankr. S.D.N.Y.1988) (same); *but see Re–Trac Corp.,* 59 B.R. 251 (waiver doctrine not applicable); *In re Las Margaritas, Inc.,* 54 B.R. 98 (Bankr.Nev.1985) (estoppel not applicable).

Given our holding above with respect to the termination of the Debtor's right to possess the Premises upon the Lease being deemed rejected, we would be inclined to agree with the court in *Re–Trac Corp.* that "[o]nce the statutory rejection of § 365(d)(4) has occurred, the lessee no longer has a possessory interest in the unexpired lease and, as such, it would be difficult to say that the lessor's actions might waive the automatic rejection and retroactively reinstate a possessory interest in the unexpired lease." *Re–Trac Corp.,* 59 B.R. at 257.

However, we need not determine the general question of whether the automatic rejection of 11 U.S.C. § 365(d)(4) and its attendant consequences can be waived by a lessor's post-rejection conduct. Assuming arguendo that the doctrine of waiver is applicable for purposes of 11 U.S.C. § 365(d)(4), based on

the facts of this case, we find that MPC did not waive its rights to possession.

In asserting that MPC waived the automatic rejection under 11 U.S.C. § 365(d)(4), the Debtor places primary reliance on MPC's acceptance of the two rent payments in this case. In support of its position the Debtor cites among its cases, *T.F.P. Resources, Inc.*. With respect to that case, we agree with the statement of the Hon. Tina L. Brozman, United States Bankruptcy Judge for the Southern District of New York, in *In re Fosko Mkts.*, 74 B.R. 384, 391 (Bankr. S.D.N.Y.1987), that "to the extent that *TFP Resources* can be read to establish a universal rule that any acceptance of rent by a landlord subsequent to the expiration of the sixty-day period constitutes a waiver, we disagree." Rather, assuming that the doctrine of waiver applies, we agree with Judge Brozman that "each assertion of waiver must be analyzed on its facts." *Id.*

Turning to the facts of this case, we do not find that a waiver, "defined as an intentional relinquishment of a known right", *THW Enterprises, Inc.*, 89 B.R. at 356, has occurred.

Following the dismissal of the Debtor's first bankruptcy case and prior to the commencement of this case, MPC rejected the Debtor's tender of rent for the month of October 1994 and continued to proceed with its state court landlord-tenant action. Clearly, such conduct evidenced an intent not to relinquish any of MPC's rights. Moreover, it is also clear to this Court that the Debtor did not view MPC's pre-petition post-dismissal conduct as a waiver of any of MPC's rights. In fact, it is obvious that the precipitating factor in the Debtor's filing this present case was MPC's rejection of the Debtor's tender of the October 1994 rent and its continuance of the landlord-tenant action.

Nevertheless, it is argued that MPC's post-petition conduct in accepting two rent payments constitutes a waiver. We disagree. First, there is no "per se" rule that accep-

tance of rent constitutes a waiver. Second, given the pre-petition conduct of MPC and given the fact that one day after MPC retained bankruptcy counsel, such counsel informed Debtor's counsel of MPC's position that the Lease had terminated in the Debtor's first case, we find MPC's explanation that it accepted the rent checks on a mistaken belief as to its obligations to be credible and do not find MPC's post-petition acceptance of the rent payments to have been an intentional relinquishment of a known right.

Moreover, while there may be a respectable body of case law that recognizes the possibility that a landlord's conduct during the pendency bankruptcy case may constitute a waiver of statutory lease rejection, no reported case has ever gone so far as to hold that a landlord's conduct in a pending case can effect a waiver of a statutory rejection which occurred in a prior and now closed case and we are certainly not prepared to so hold.

*ASSUMPTION*

We recognize that we might be perceived as somewhat inconsistent in holding that although the Lease survived, the Debtor's right to possession of the Premises under the Lease terminated during the Debtor's first case. When we raised this possibility at the hearing held on January 12, 1995, Debtor's counsel stated "I don't see how you can have a lease without the possession". In response, we would note that our holding is in line with the cases cited by the Debtor such as *Austin* and *Hirschhorn*. A careful reading of these cases reveals that the "lease" that survived in both cases was a lease without a possessory interest.[6]

Moreover, any perceived inconsistency in our holding would arise out of a lack of understanding of the difference between the traditional and the modern concept of a lease. Traditionally, a lease was thought of as a mere conveyance of an "estate"[7] which gave the tenant a right to possession. This

---

**6.** In *Austin,* while the "lease" survived its deemed rejection, the court as previously noted, did hold that the debtor-lessee was required to immediately surrender the leased premises. In *Hirschhorn,* the "lease" survived notwithstanding that two months prior to the court's decision, the

debtor-lessee had moved from the leased premises.

**7.** *See* Restatement of Property § 9 (1936) ("estate" means "possessory interest in land").

estate was, and still is, called a "leasehold". Today a lease is more than a mere conveyance; it is also a bilateral contract. "It has been observed that a modern lease ordinarily involves multiple and mutual running covenants between lessor and lessee, that the transaction is essentially a bilateral contract involving a continuing exchange of promises and performances rather than a completed conveyance of an estate in land or property." R. Schoshinski, *American Law of Landlord and Tenant* § 1:1, p. 4 (1980). Thus, today's lease is "part contract and part conveyance." *In re Sok Jun Kong,* 162 B.R. 86, 95 (Bankr. E.D.N.Y.1993). This dual nature was recognized by the New York Court of Appeals, *219 Broadway Corp. v. Alexander's, Inc.,* 46 N.Y.2d 506, 509, 414 N.Y.S.2d 889, 387 N.E.2d 1205 (1979), when it stated:

> "a lease, especially a modern lease, is generally more than a simple conveyance of an interest in land for a fixed period of time. Typically it is also a contract which requires the parties, particularly the tenant, to fulfill certain obligations while the lease is in effect." (*quoting Geraci v. Jenrette,* 41 N.Y.2d 660, 665, 394 N.Y.S.2d 853, 363 N.E.2d 559). Thus, it can be said, and we would be remiss not to recognize, that a lease achieves two ends, to wit: the conveyance of an estate in real property from lessor to lessee, and the delineation of the parties' rights and obligations pursuant thereto.

Accordingly, while the primary purpose of a lease and the concept with which the term "lease" is most often identified remains the conveyance of an estate or leasehold to a tenant, a modern lease is a contract of which such conveyance is merely one aspect.

Thus, there exists a distinction between a "lease", as a document which defines a multitude of mutual rights and duties, and a "leasehold" or the right to possession conveyed by the lease which is merely one such right enumerated therein. This distinction was noted in *In re Cheney Bros.,* 12 F.Supp. 605, 608 (D.Conn.1935) wherein the court stated:

> When the landlord claims that a lease is not a contract, executory in whole or in part, but an estate in land, he enters a domain of dubious casuistry in which he is by no means invulnerable. For a lease as such is not an estate in anything, though a leasehold is. The lease embodies a demise from the landlord, in addition to contractual obligations ...

This distinction is also implicitly recognized in 11 U.S.C. § 365(h)(1) which provides in relevant part that upon a rejection of a lease by a debtor-lessor, a non-debtor lessee may treat the "lease" as terminated or alternatively, *"may remain in possession of the leasehold ... under any lease ..."* [emphasis supplied] and this has been implicitly recognized in the cases cited by the Debtor.

The significance of distinguishing a "lease" from a "leasehold" is to illustrate that a "lease" can survive even where, as here, the "leasehold" or the right to possession no longer exists. Moreover, the "lease" [without a "leasehold"] may be capable of assumption by a debtor-lessee although only in rare cases would a debtor-lessee want to do so. For example, a lease may provide a debtor-lessee with a right of first refusal in the event that a lessor decides to sell the leased property. If such right is conditioned neither upon the continued existence of the right to possession nor upon absence of breach, then such right would survive a deemed rejection and a debtor might assume said lease for the purpose of retaining the right of first refusal.

However, we have no indication of any such benefit which would accrue to the estate upon an assumption herein. The Debtor's only purpose in seeking assumption of the Lease is to remain in possession of the Premises. Since assumption would not give the Debtor such relief because the "lease" that existed at the commencement of this case no longer contained a "leasehold" or a right to possession of the Premises, the Debtor's motion must be denied.

*CONCLUSION*

For the reasons set forth above, the Debtor's motion is denied. Since 11 U.S.C. § 365(d)(4) mandates that when a lease is deemed rejected "the trustee shall immedi-

ately surrender such non residential real property to the lessor," MPC is entitled to an order directing the Debtor to immediately surrender possession of the Premises. Moreover, to the extent that MPC may be stayed from regaining possession of the Premises it is entitled to have that stay terminated.

MPC is directed to settle an order consistent with this decision within ten (10) days.